James E. CLAY, Mary Lou Clay, and
Buddy Clay Realty, Inc.,
Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, NCNB Texas National
Bank, and Todd E. Bragg, Defendants–
Appellees.

No. 90–4659.

United States Court of Appeals,
Fifth Circuit.

June 11, 1991.

John A. Mumm, Sanders & Mumm, Sherman, Tex., for plaintiffs-appellants.

Paul C. Wolf, Ruth R. Rodriguez, (FDIC), Dallas, Tex., for FDIC.

Douglas S. Lang, Craig B. Florence, Gardere & Winne, Dallas, Tex., for NCNB Texas Nat. Bank and Todd E. Bragg.

Before SMITH and DUHÉ, Circuit Judges, and SHAW, Chief District Judge.[1]

JERRY E. SMITH, Circuit Judge:

James E. Clay, Mary Lou Clay, and Buddy Clay Realty, Inc. (the Clays), were the guarantors of several notes. The originating bank failed and was transferred by the Federal Deposit Insurance Corporation (FDIC) to NCNB Texas National Bank (NCNB) as part of a purchase and assumption transaction. NCNB eventually foreclosed on the property underlying the notes, and the Clays now contend that in doing so, it breached its fiduciary duties to them by allowing the value of the collateral to dissipate. We affirm the district court's summary judgment denial of the Clays' claims.

I.

James and Mary Lou Clay sold their stock in Fun Time Ice, Inc. (Fun Time), to Interstate Carriers Express, Inc. (Interstate Carriers). To finance the sale, Interstate Carriers and Fun Time executed several promissory notes payable to InterFirst Bank, Denison, N.A. (InterFirst); Interstate Carriers also executed a $300,000 promissory note payable to James Clay and Buddy Clay Realty, Inc.

As security for the InterFirst loans, the Clays executed guaranty agreements for all indebtedness owed by Fun Time or Interstate Carriers. InterFirst also took a deed of trust on real estate and equipment owned by Fun Time. As security for the $300,000 note, Interstate Carriers executed a deed of trust on Fun Time assets in favor of James Clay and Buddy Clay Realty, Inc. Buddy Clay Realty, Inc., and James Clay then executed a subordination agreement, subordinating their lien to that of InterFirst.

InterFirst later merged with another bank and became First RepublicBank Denison, N.A. After that bank became insolvent, the FDIC was appointed as receiver. The FDIC created a bridge bank and entered into a purchase and assumption transaction with NCNB.

The instruments relating to the Fun Time transaction were assigned to NCNB. After Interstate Carriers and Fun Time defaulted on their obligations, NCNB commenced foreclosure proceedings. The Clays sued in state court for injunctive relief to prevent foreclosure and for affirm-

1. Chief District Judge of the Western District of Louisiana, sitting by designation.

ative relief for NCNB's alleged negligence, unconscionable conduct, and breach of fiduciary duties. The case was removed to federal court, and the defendants successfully moved for summary judgment.

## II.

We will not affirm a summary judgment unless "we are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that the movant is 'entitled to a judgment as a matter of law.'" *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.) (quoting Fed.R.Civ.P. 56(c)), *clarified on other grounds*, 832 F.2d 1378 (5th Cir.1987). If any material facts are disputed, summary judgment is improper, as we will not weigh the evidence or resolve material fact disputes. *United States Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir.1975). We review all purely legal issues *de novo*.

The Clays contend that the district court erred by holding that they waived their claims of breach of duty in the guaranty agreement. The Uniform Commercial Code (UCC) provides that "[e]very contract or duty within [the UCC] imposes an obligation of good faith in its performance or enforcement." Tex. Bus. & Comm.Code Ann. § 1.203 (Tex. UCC) (Vernon 1968). We note, however, that Texas courts are skeptical about reading a requirement of good faith and fair dealing into guaranty contracts. More importantly, even assuming that the requirement does apply, "good faith" is defined by the UCC as "honesty in fact." Tex. Bus. & Com.Code Ann. § 1.201(19) (Tex. UCC) (Vernon 1968). As the Texas Supreme Court has stated,

> It is not at all clear that a guarantee agreement ... is a contract within the UCC to which section 1.203 applies. Assuming, however, that section 1.203 does apply to the guaranties in this case, it does not support [the guarantors'] contention.... The guarantors' complaint in this case is not that the FDIC was dishonest, but that it was not diligent. The UCC does not require diligence for good faith.

*FDIC v. Coleman*, 795 S.W.2d 706, 708 (Tex.1990) (citations omitted).

■ In this case, the Clays contend that NCNB did not properly oversee their loan; at its heart, this simply is a claim that NCNB did not operate with due diligence. The Clays may be able to show, at best, that NCNB was not as diligent as it could have been, but they certainly cannot show that NCNB was dishonest or acted in bad faith, as required under Texas law. The Clays thus have not alleged any actions on the part of the bank that would violate any duty of good faith and fair dealing, even assuming that one existed in this contract. *Cf. id.* at 709 ("The FDIC had no federal common law duty to foreclose its lien expeditiously.").

■ Furthermore, even assuming that a common law duty of good faith applies to the guarantor relationship, the plain language of the guaranty waiver precludes its application in this case. As the contract states, "Guarantor further agrees that Bank shall not be liable for its failure to use diligence in the collection of the Guaranteed Indebtedness or in preserving the liability of any person liable on the Guaranteed Indebtedness."

We enforce unambiguous waivers such as this one.[2] For example, in *FDIC v. Nobles*, 901 F.2d 477, 480–81 (5th Cir.1990), we confronted similar language in a guaranty agreement and held that "[t]he unambiguous language of [the contract] relieves the FDIC of any duty that might otherwise exist to preserve and to protect the collateral."

■ The Clays contend that we should not enforce the plain language of the waiver because an implied duty to perform with skill and care arose out of the parties'

---

**2.** *E.g., FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988). By analogy to Texas indemnification law, the Clays contend that any waiver must be specific in order to apply. The language in the contract, however, was not ambiguous, as the quoted section shows.

contractual relationship. What the Clays do not address, however, is the settled rule in Texas that a creditor, not in physical possession of collateral, owes no duty of diligence to a guarantor to prevent dissipation of the collateral or to enforce collection of the indebtedness.[3]

In this case, NCNB never obtained possession of the collateral because, before NCNB completed its foreclosure, the Clays obtained a temporary restraining order preventing NCNB from gaining control. Thus, because the Clays prevented NCNB from ever obtaining the property in the instant case, they also absolved NCNB of an implied duty (if any existed) to safeguard the value of the collateral.[4]

Thus, even if a duty of good faith and fair dealing applied in this case, the plain language of the contract the Clays signed absolves NCNB of any liability. The district court therefore did not err by holding that the breach of contract claims were contractually waived.

### III.

■ In addition to their contractual arguments, the Clays also contend that the district court erred by holding that there was no evidence reflecting a genuine issue concerning a fiduciary relationship between the parties. The Clays assert that the bank's control over the loan was so great that they were rendered helpless to protect their own interests. The Clays characterize the guaranty agreement as an adhesion contract and argue that the disparity in bargaining power between the two parties created a "special relationship" between them, thus establishing fiduciary duties.

*See Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex.1988).

What the Clays overlook is that Texas does not impose a fiduciary duty of good faith in ordinary commercial transactions.[5] This includes guarantor contracts, for "[u]nder Texas law there is no general fiduciary obligation between a lender and a borrower or between business parties." *In re Letterman Bros. Energy Secs. Litig.,* 799 F.2d 967, 975 (5th Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). While it is true that the *Coleman* court left open the possibility that a gross disparity of bargaining power could create a duty of good faith in some contexts, there is little reason to reach such a result in this case, considering that both parties agree that the transactions were conducted at arm's length and that the Clays were represented by competent legal counsel. We thus affirm the district court's grant of summary judgment on this issue.

### IV.

Finally, the Clays contend. that the district court erred by holding that their claims of unconscionability, breach of good faith, breach of fiduciary duty, and negligence are barred by the doctrine of *D'Oench Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e). The Supreme Court in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), defined "agreement" for purposes of section 1823(e) to include a "condition upon performance." The Clays allege that a condition upon per-

---

**3.** *See First Nat'l Bank v. Helwig,* 464 S.W.2d 953, 955 (Tex.Civ.App.—Austin 1971, no writ) (no liability for creditor unless collateral "sufficiently under its control"); *First Nat'l Bank v. Brown,* 172 S.W.2d 151, 155 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.); *Stetson v. First Nat'l Bank,* 44 S.W.2d 792, 794 (Tex.Civ.App.—Beaumont 1931, writ ref'd).

**4.** The Clays also contend that the guaranty agreement's waiver does not apply to them in their status as second lienholders, as opposed to guarantors. The Clays, however, cite no authority for this proposition. Second lienholders are owed no greater duty than that owed to guaran-

tors. *E.g., Chandler v. Orgain,* 302 S.W.2d 953 (Tex.Civ.App.—Fort Worth 1957, no writ). Thus, the fact that they are both guarantors and second lienholders does not embellish their rights.

**5.** *See, e.g., Coleman,* 795 S.W.2d at 708–09 (secured creditor does not owe a guarantor a common law duty of good faith); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 481–82 (Tex.App.—Corpus Christi 1989, writ denied) (no special cause of action for breach of the duty of good faith and fair dealing in a supplier-distributor relationship).

formance of their guaranty agreement was NCNB's duty to manage the Fun Time loan prudently.

■ The district court did not err by holding that showing this would require evidence outside the bank's files. The documents to which the Clays point as establishing NCNB's fiduciary duties are insufficient to establish that duty. The guaranty contract itself explicitly absolves NCNB of any special duties, meaning that at best the bank's records might allow us to infer extra duties.

We already have held that where bank documents only raise an "inference" of a secret agreement, such an inference is insufficient to support a judgment where the FDIC is one of the parties involved in the bank transfer. *See Beighley v. FDIC*, 868 F.2d 776, 782–83 (5th Cir.1989) (we will construe no extraneous duties unless they are "state[d] in writing"); *see Bowen v. FDIC*, 915 F.2d 1013, 1016 (5th Cir.1990) (the FDIC need not search a failed bank's documents for inferences and hidden duties). Thus, because the Clays cannot prove their claims on the face of the documents available in the bank records, they cannot prove their cause of action without running afoul of *D'Oench, Duhme*.[6]

## V.

Even viewing all evidence in the light most favorable to the Clays, they have failed to present any material disputes required to support their contract or tort claims. We therefore AFFIRM the district court's grant of summary judgment in all respects.

---

**6.** The Clays also contend that the district court erred by rendering summary judgment against their claim for negligence against NCNB alone. As already discussed, however, the Clays failed to prove that there was any duty that NCNB owed to them under the contract. Without this duty, there can be no negligence action.

Furthermore, because the Clays' injury here is limited to the economic loss of the subject of a contract, their claim is not treated as a tort claim under Texas law, but rather as a derivative contract claim. Under Texas law,

[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986) (citations omitted). Since the claim is a contract claim, any damages for the breach were waived in the guaranty contract waiver provision, as discussed above.