In re James W. SMITH, II, Debtor.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund as Receiver for Vernon Savings and Loan Association, FSA, Plaintiff–Appellee,**

v.

**James W. SMITH, II, Defendant–Appellant.**

In re Vernon S. SMITH, Jr., Debtor.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund as Receiver for Vernon Savings and Loan Association, FSA, Plaintiff–Appellee,**

v.

**Vernon S. SMITH, Jr., Defendant–Appellant.**

Civ. A. Nos. CA3–90–2488–D, CA3–90–2489–D.
Bankruptcy Nos. 387–35881–SAF–7, 387–36695–SAF–7.
Adv. Nos. 388–3278, 388–3390.

United States District Court, N.D. Texas, Dallas Division.

Dec. 5, 1991.

Daniel J. Sheehan, Jr. (argued) of Sheehan, Young & Culp, Dallas, Tex., for appellant James W. Smith, II.

George H. Tarpley (argued), David L. Ellerbe, and Kenric D. Kattner of Sheinfeld, Maley & Kay, Dallas, Tex., for appellant Vernon S. Smith, Jr.

Grady L. Pettigrew, Jr., Brenda H. Collier (argued), Michael J. Pollack, and Christine M. Anderson of Arter & Hadden, Dallas, Tex., for FDIC.

FITZWATER, District Judge:

These appeals from judgments of the bankruptcy court holding two debts nondischargeable on the basis of 11 U.S.C. § 523(a)(2)(A) present the question whether the Federal Deposit Insurance Corporation ("FDIC") may invoke the *D'Oench, Duhme*[1] estoppel rule to satisfy the reliance element of a nondischargeability claim. Concluding the *D'Oench, Duhme* rule is not a surrogate for proof of actual reliance, the court reverses the judgments and remands these adversary proceedings to the bankruptcy court.

## I

The facts of these cases are set out at length in a published opinion of the bankruptcy court. *See In re Smith*, 113 B.R. 297, 298–304 (Bankr.N.D.Tex.1990). The court therefore recounts only the facts pertinent to the question decided today, together with the applicable procedural history.

Two debtors, James W. Smith, II ("James") and his cousin, Vernon S. Smith, Jr. ("Vernon"), appeal judgments of the bankruptcy court holding two debts—one owed by both James and Vernon in the amount of $1.085 million and one owed by James in the sum of $1,586,236.36—are not dischargeable in their respective bankruptcies.

In 1987 James and Vernon voluntarily filed chapter 7 petitions. Thereafter, the Federal Deposit Insurance Corporation ("FDIC–Receiver")[2] filed complaints in each of the debtor's cases to determine the nondischargeability of three debts. The FDIC alleged that loans made by the failed Vernon Savings and Loan Association ("VSLA") to James and/or Vernon were actually part of a conspiracy among the debtors, VSLA's principal owner, and other VSLA senior officers. The conspirators allegedly intended to dissipate the assets of and to injure VSLA and the insurance fund of the Federal Savings and Loan Insurance Corporation ("FSLIC"), and to benefit VSLA's senior officers. The three transactions in question were known as the Cedar Springs, Montfort/Celestial, and New York Avenue loans. The FDIC–Receiver predicated its complaints on several constituent theories, but the common thread was that the debts in question were not dischargeable pursuant to various provisions of 11 U.S.C. § 523(a).

The two adversary proceedings in the respective bankruptcy cases were tried to the bankruptcy court in a consolidated bench trial. The bankruptcy court found for the FDIC–Receiver as to the Cedar Springs and Celestial/Montfort transactions and against it with respect to the New York Avenue transaction. The court determined that James and Vernon engaged in conduct that made these debts nondischargeable pursuant to § 523(a)(2)(A).[3] The court concluded the

---

1. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

2. The FDIC–Receiver was substituted as the plaintiff pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 183 ("FIRREA"). The Federal Savings and Loan Insurance Corporation filed the adversary complaint in its capacity as receiver for Vernon Savings and Loan Association, FSA, as receiver for Vernon Savings and Loan Association, and in its corporate capacity as assignee of certain rights and liabilities from Vernon Savings and Loan Association. For clarity, the court refers to the plaintiff throughout this opinion as the FDIC–Receiver.

3. The FDIC–Receiver also alleged the Cedar Springs and Celestial/Montfort debts were nondischargeable on the basis of § 523(a)(6). *See* 113 B.R. at 308. The bankruptcy court did not reach this contention, and it remains to be determined on remand.

FDIC–Receiver failed to prove the New York Avenue loan was nondischargeable under either § 523(a)(2)(A) or (a)(6).[4]

Of significance to the present appeal, the bankruptcy court held the FDIC–Receiver need not satisfy the reliance element of a § 523(a)(2)(A) nondischargeability claim. *See* 113 B.R. at 306 (FDIC–Receiver "need not show actual reliance"). The court determined the FDIC–Receiver had proved the Smiths violated this section by structuring the Cedar Springs transaction in a manner calculated to deceive lending institution examiners. *Id.* at 305. VSLA and the Smiths concealed from the examiners the fact that VSLA had loaned the Smiths more than 100% of the collateral's value in consideration for a transaction in violation of lending norms. *Id.* The court held the Smiths knowingly deceived the examiners about side agreements which the Smiths expected would transfer the risk of an imprudent loan to VSLA. *Id.* They conspired with VSLA to deceive the examiners about the true purposes and amount of the Cedar Springs loan. *Id.* at 305–06. With respect to the Celestial/Montfort property, the court below found that James concealed and intentionally misled lending institution examiners about the full and actual uses of the loan proceeds, *see id.* at 307, thus constituting "a fraud upon the government insurance program," *id.* The court held that James intended to and did injure the insurers of VSLA. *Id.* at 308.

With respect to the FDIC's proof of nondischargeability, the bankruptcy court concluded in relation to the Cedar Springs loan that

> [VSLA], as co-conspirator with the Smiths, could not sustain against the Smiths an action under § 523(a)(2)(A) because [VSLA] could not show it reasonably relied on the deceptive closing statement and loan applications. However, the FDIC need not show actual reliance. The FDIC as receiver may, as a matter of law, reasonably rely on the documents in the loan file contemporaneous with the

making of a loan, such as the closing statement, loan application, loan committee approvals and the minutes of the meeting of the Board of Directors.

*Id.* at 306. The bankruptcy court did not make a similar explicit finding as to the Celestial/Montfort loan, but its determination that "lending institution examiners were entitled to rely on the truth of the documents stating the purpose of the loan," *see id.* at 308, is a fair shorthand rendition of the court's earlier determination that the FDIC–Receiver could satisfy the reliance element as a matter of law.

The bankruptcy court entered judgment against James, holding the FDIC–Receiver was entitled to recover from him the sum of $1.085 million plus interest for the Cedar Springs transaction and $1,586,236.36 plus interest for the Celestial/Montfort transaction. The court entered a corrected judgment against Vernon, holding the FDIC–Receiver was entitled to recover from him the sum of $1.085 million plus interest for the Cedar Springs transaction.

From these judgments the debtors take these appeals.

## II

■ A preliminary procedural question is presented by James' notice of appeal.

In the present case, James' notice—in contrast with Vernon's—does not purport expressly to appeal the bankruptcy court's final judgment. Instead, the notice states that James "appeals ... from the Order on Motions for New Trial, for Reconsideration and Additional Findings of Fact and Conclusions of Law of the Bankruptcy Court entered in this adversary proceeding on the 12th day of September, 1990."[5] This court has a duty to determine, *sua sponte* if necessary, its appellate jurisdiction. *Huddleston v. Nelson Bunker Hunt Trust Estate*, 102 B.R. 71, 73 n. 1 (N.D.Tex.1989), *aff'd*, 935 F.2d 1290 (5th Cir.1991) (table). Fed.R.Bankr.P. 8001(a) requires, in perti-

---

**4.** The FDIC–Receiver has not appealed this holding.

**5.** Vernon's notice of appeal also specifies that he appeals "the Final Judgment herein entered on May 25, 1990, as corrected by Order entered June 18, 1990."

nent part, that a notice of appeal "shall conform substantially to Official Form No. 35."[6] This form provides for specification and description of the final judgment, order, and decree of the bankruptcy court from which the appeal is taken. *See* West Pamp.Supp.1989.[7] The parallel rule of the Federal Rules of Appellate Procedure is Rule 3(c). In relevant part, it provides expressly that a notice of appeal "shall designate the judgment, order or part thereof appealed from."

In the context of Fed.R.App.P. 3(c), the Fifth Circuit has held a notice that designates an appeal from an order denying a motion for new trial does not specify the judgment appealed from as required by Rule 3(c). *See Osterberger v. Relocation Realty Serv. Corp.*, 921 F.2d 72, 73 (5th Cir.1991). This is because an order denying a motion for new trial is reviewable but not appealable. *Id.* (citing *Youmans v. Simon*, 791 F.2d 341, 349 (5th Cir.1986)). In the present case, James expressly purports to appeal the denial of motions for new trial and reconsideration and a request for additional findings and conclusions.

■ In *Osterberger* the circuit court examined the applicable jurisprudence to explain why it had jurisdiction over the appeal. *Id.* at 72.[8] The panel concluded that an appeal from an order denying a motion for new trial is to be treated as an appeal from the adverse judgment itself. *Id.* at 73. In contrast to the failure properly to

designate an appellant, which is a jurisdictional defect, *id.* (citing *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988)), the failure to specify the correct judgment is irrelevant where it is clear which judgment the appellant is appealing. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962)).

■ The court finds James' intent to appeal the underlying judgment to be adequately manifested in his notice of appeal. As in *Osterberger*, the court concludes it has jurisdiction to consider the appeal. But the court stresses that the proper practice when appealing a judgment or order is to specify that the appeal is taken from the bankruptcy court's judgment. This is the clear contemplation of Rule 8001(a) and Official Form No. 35.

### III

James and Vernon challenge the judgments of nondischargeability on several grounds, but the court need only reach the question whether the bankruptcy court erred when it excused the FDIC–Receiver from complying with 11 U.S.C. § 523(a)(2)(A) by proving reliance in fact.

### A

Section 523(a)(2)(A)[9] provides that a discharge under the Bankruptcy Code does

---

6. Rule 8001(a) was amended effective August 1, 1991 to provide, in pertinent part, that a notice of appeal "shall conform substantially to the appropriate Official Form." The applicable Official Form is No. 17, and is modified slightly from Form No. 35. Because the amended Rule took effect after these appeals were filed, it has no application here.

7. As pertinent to these appeals, Official Form No. 35 provides, in relevant part:

    NOTICE OF APPEAL

    \_\_\_\_\_, the plaintiff [or, defendant or, other party] appeals to the district court [or the bankruptcy appellate panel], from the final judgment [or, final order or, final decree (describe it) ] of the bankruptcy court entered in this adversary proceeding on the \_\_\_ day of \_\_\_\_\_. The parties to the judgment [or, order, or decree] appealed from and the names and addresses of their respective attorneys are as follows: \_\_\_\_

8. The court recognizes there are peculiar circumstances in bankruptcy cases that render traditional notions of finality irrelevant. The present judgments, however, are plainly final.

    The court is also aware that Rule 8001(a) provides the "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal." Fed.R.App.P. 3(a) contains a similar provision, however, and the Fifth Circuit in *Osterberger* nevertheless found it necessary to decide whether its jurisdiction had been properly invoked.

9. Section 523(a)(2)(A):

    A discharge under ... this title does not discharge an individual debtor from any debt— ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a

not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement concerning the debtor's or an insider's financial condition. A party who objects to discharge of a debt on the ground of fraud apparently must prove: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations. *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) (quoting *In re Roeder*, 61 B.R. 179, 181 (Bankr.W.D.Ky.1986)).[10] The preponderance of the evidence standard governs the creditor's proof burden. *Grogan v. Garner*, — U.S. ——, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

■ As an exception to dischargeability, § 523 is to be narrowly construed and the burden of proving its operation rests on the creditor seeking to prevent the discharge. *See In re Foreman*, 906 F.2d 123, 126 (5th Cir.1990). "In determining whether a particular debt falls within one of the exceptions to section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor." *Id.* at 127–28 (quoting 3 *Collier on Bankruptcy*, ¶ 523.05A (15th ed. 1989)). The creditor must establish by satisfactory proof each of the five elements of nondischargeable fraud. Without such proof, judgment cannot be entered for the creditor. *See* 1 W. Norton, *Bankruptcy Law and Practice* § 27.41 (1982).

In the present cases the bankruptcy judge held the Cedar Springs and Celestial/Montfort debts were nondischargeable

under § 523(a)(2)(A). The bankruptcy court excused the FDIC–Receiver from proving it had actually relied upon appellants' fraudulent conduct, concluding that *D'Oench, Duhme* permitted the FDIC–Receiver to rely as a matter of law on documents contained in the loan files at the time the loans were made. *See* 113 B.R. at 306.

Appellants contend the bankruptcy court erred by holding the FDIC–Receiver need not prove reliance in fact. They posit that § 523(a)(2)(A) contains no exception to the reliance requirement and that courts should not extend the common law *D'Oench, Duhme* estoppel rule into a congressionally-mandated evidentiary scheme, thereby effectively rewriting a statute to reach a result the judiciary finds desirable. Vernon also argues *D'Oench, Duhme* cannot be converted from a rule of estoppel to a substitute for affirmative proof. The FDIC–Receiver contends the Smiths' debts are nondischargeable because the debts were procured by fraud against a bank regulator and that the bankruptcy court properly applied *D'Oench, Duhme* to hold the FDIC had satisfied the element of reliance as a matter of law.

**B**

■ As a preliminary matter, the court has difficulty accepting the FDIC–Receiver's contention that the Smiths procured the loans in question by defrauding bank examiners. What money, property, or services did the Smiths obtain from the FDIC? While it is true the FDIC (beginning with its predecessor the FSLIC) insured VSLA's deposits, the regulator/insurers did not make the loans. To say these debtors obtained money from the institutional insurer when they borrowed from VSLA is to ignore the legal relationship between the entities involved.

statement respecting the debtor's or an insider's financial condition[.]

**10.** The *Bercier* panel did not expressly adopt this formulation, but implicitly approved it. *See* 934 F.2d at 692. The bankruptcy court below applied a four-part test that is consistent with that quoted by the Fifth Circuit in *Bercier*. According to the bankruptcy court, a creditor must

prove (1) the debtor made false representations, (2) with the intent and purpose of deceiving the creditor, (3) the creditor reasonably relied on the representations, and (4) the creditor sustained a loss as a result of the representations. *Smith*, 113 B.R. at 304 (citing *In re Church*, 69 B.R. 425, 432 (Bankr.N.D.Tex.1987)).

This principle is no nuance in the present context. Section 523(a)(2)(A) contemplates the nondischargeability of a debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud. Under the facts of these cases, the false pretenses, false representations, or actual fraud of James and Vernon did not cause the FDIC or the FSLIC to make loans. Nor did such conduct cause VSLA to make the loans in question. Indeed, the evidence is that VSLA and the Smiths acted in complicity with each other.

Actual reliance is a causation-type element in a fraud claim. If a party does not rely on a fraudulent representation, the representation cannot be said to have produced an injury to be remedied. That the FDIC–Receiver cannot prove factual reliance in cases like the present one, and that reliance as a matter of law must be invoked, simply underscores the inapplicability of § 523(a)(2)(A). Neither the FDIC nor the FSLIC provided money, property, services, or an extension, renewal, or refinancing of credit to the appellants.[11] It follows, then, that neither entity relied on appellants' fraud and that the debts, although enforceable, are nevertheless dischargeable.

C

▇ The court now turns to the question whether the *D'Oench, Duhme* doctrine may replace proof of reliance in fact in a § 523(a)(2)(A) nondischargeability action.

1

▇ For reasons set out below, the court holds that *D'Oench, Duhme* may not be employed to establish reliance as a matter of law. At least in the context of a nondischargeability claim,[12] this rule of estoppel may not be substituted for an ineluctable element of affirmative relief. The court below did not lack support, however, for its

contrary holding. Indeed, the cases decided prior to the bankruptcy court's decision that address the precise question have uniformly reached the same conclusion as did the bankruptcy court. And a case decided after this appeal was orally argued cites some of these opinions, as well as the decision below, in so applying *D'Oench, Duhme.* Because today's opinion stands alone, it is appropriate that the court survey the contrary published opinions and explain why it declines to follow them.

The use of *D'Oench, Duhme* as a surrogate for actual reliance in the § 523(a)(2)(A) context is of relatively recent origin, perhaps finding its genesis in *In re Bombard,* 59 B.R. 952 (Bankr.D.Mass. 1986). There the FDIC in its corporate capacity acquired a note executed by defendant Bombard in favor of a predecessor bank. Bombard later took bankruptcy and alleged he had executed the note without intending to repay it and only to obtain funds for a third party. This would enable the bank and the real borrower to circumvent the bank's lending limit to any one borrower. When the bank failed, the FDIC became the note holder as part of a purchase and assumption transaction. In the debtor's bankruptcy, the FDIC sought to establish the debt was nondischargeable pursuant to § 523(a)(2)(A). Despite the fact that "the proof of the Bank's reliance was unpersuasive," *id.* at 954, the bankruptcy court held the debt was nondischargeable and, by virtue of "the FDIC's special position vis a vis the Debtor," that the FDIC was entitled to rely upon the debtor's signature on the note as a matter of law. *Id.* The *Bombard* court did not expressly rest its decision upon *D'Oench, Duhme;* instead, it held on the basis of 12 U.S.C. § 1823(e) that the FDIC in its corporate capacity was entitled to rely. *See id.* at 954–55.

The bankruptcy court in *In re Boebel,* 79 B.R. 381 (Bankr.N.D.Ill.1987), had before it

---

**11.** That the FDIC or FSLIC may have provided money to James and Vernon as insured *depositors* is irrelevant for purposes of § 523(a)(2)(A).

**12.** The court has no occasion today to address whether under all circumstances *D'Oench, Duhme* may or may not satisfy as a matter of law a factual element of an affirmative proof burden.

a motion for summary judgment, pursuant to which the FDIC sought to establish the nondischargeability of a note secured by stored soybeans. The makers filed for bankruptcy and admitted they did not have the stored soybeans at the time they executed the note. They argued, however, that they informed bank representatives of this fact at the time they signed the note and security agreement. The FDIC, in its corporate capacity, acquired the note and security agreement when the bank failed. The bankruptcy court denied the summary judgment motion because there was a fact question regarding the debtors' intent to deceive. *Id.* at 385. Citing *Bombard,* the court held that by virtue of 12 U.S.C. § 1823(e), "the FDIC has met the element of reliance as a matter of law." *Id.* at 384.

In *In re Figge,* 94 B.R. 654 (Bankr. C.D.Cal.1988), the bankruptcy court expressly held that *"D'Oench* satisfies the reliance prong of the [§ 523(a)(2)(A) ] test." *Id.* at 669. According to the evidence, a group of borrowers executed notes in favor of a bank that was subsequently placed in FDIC receivership. When some of the borrowers sought relief in bankruptcy, the FDIC brought suit to determine the debts were nondischargeable. The debtors contended the bank's president was an active participant in their scheme to use numerous personal loans to arrange otherwise prohibited multi-million dollar loans for different partnerships. The debtors alleged the bank president agreed the partnerships would be the principal source of repayment of loans. Because of the bank's participation in the scheme, the debtors claimed the bank and the FDIC were estopped from establishing any misrepresentations (and thus unable to show any reliance on the misrepresentations as required by § 523(a)(2)(A)).

The court held the *D'Oench, Duhme* doctrine applied to bar the debtor's assertion of the estoppel defense based on the side agreements with the bank president. *Id.* at 668. In addition, the court stated that *"D'Oench* creates a presumption of reasonable reliance, rebuttable only by proof of

compliance with 12 U.S.C. § 1823(e). Absent such proof, the element of reliance required by Section 523(a)(2)(A) and (B) is satisfied upon documentary evidence from the debtor's loan file, showing the written terms and conditions of the loan agreement." *Id.* at 668. After reviewing the evidence, the court held the debt nondischargeable. *Id.* at 669; *see also id.* at 668 ("This is a classic case for application of the *D'Oench* doctrine to establish reasonable reliance and enforce the debt against the borrower").

The only district court to decide the question in a published opinion, *see In re Cerar,* 97 B.R. 447 (C.D.Ill.1989),[13] considered whether proof of reliance was required "where the debtor's fraud was performed in conjunction with his creditor for the purpose of deceiving bank examiners and ultimately the FDIC." *Id.* at 449. A borrower and bank officers had forged a promissory note to prevent bank examiners from detecting that the borrower had exceeded what he could legally borrow. The bank subsequently failed and the FDIC was appointed receiver. When the debtor took bankruptcy, the FDIC challenged the dischargeability of the note. The debtor contended the debt was dischargeable because the FDIC could not establish actual reliance. The district court affirmed the bankruptcy court's conclusion that "the FDIC was entitled to rely as a matter of law." *Id.* at 450. The court held that "[w]here the debtor acted in complicity with the bank to deceive the bank examiners, it appears to be the better policy to require that the debtor bear the consequences rather than the innocent depositors or creditors of the failed bank." *Id.*

*In re Stefanoff,* 106 B.R. 251 (Bankr. N.D.Okla.1989), expressly followed *Cerar.* In *Stefanoff* a borrower executed a note in favor of a savings and loan association to purchase land for development. The borrower arranged through third party purchasers to misrepresent to the bank the value of the land so that he and his partners could pocket excess loan proceeds. The FSLIC eventually took over the failed

---

**13.** Affirming 84 B.R. 524 (Bankr.C.D.Ill.1988).

institution and foreclosed upon the property. It then placed the borrower in involuntary bankruptcy and sought to prevent discharge of the debt pursuant to §§ 523(a)(2)(A) and (a)(6).

The bankruptcy court found the FSLIC had clearly proven each of the elements of nondischargeability except reliance. As to that element, the court concluded the evidence insufficient to show the failed institution had relied on the false misrepresentations in making the loan. *Id.* at 256. Nevertheless, the court held under the existing law, particularly *Cerar*, that the "FSLIC is deemed to have relied on the truth of the representation in the loan files as to the purchase price of the ... property and, thus, has met its burden of proof on the issue of reliance." *Id* at 257.

Three published opinions that address reliance have been handed down subsequent to the bankruptcy court decision below. In companion opinions involving the FDIC (in each case as receiver for a different institution) and the same debtor, *see In re Lefeve,* 131 B.R. 588 (Bankr.S.D.Miss.1991); *In re Lefeve,* 131 B.R. 604 (Bankr.S.D.Miss.1991), the bankruptcy court in *dicta* discussed Fifth Circuit *D'Oench, Duhme* jurisprudence. Neither *Lefeve* opinion involved a borrower acting in collusion with the failed institution to defraud regulators. The debtor, as borrower in one case and as guarantor in the other, attempted to and did defraud the lenders, and the bankruptcy court found the institutions actually relied on the fraud. *See* 131 B.R. at 594, 609. In *dicta* the court held that even absent evidence of actual reliance by the failed institutions, the FDIC was presumed to have relied on the fraud as a matter of law. *See id.* at 595, 610.

A case decided after the instant appeal was orally argued, and which cited the decision below, is *In re Calhoun,* 131 B.R. 757 (Bankr.D.D.C.1991). In *Calhoun* the FDIC as receiver sought to establish the

nondischargeability of a note and the debtor moved to dismiss the complaint because the FDIC had not pleaded reliance by the failed bank on the alleged fraud. The bankruptcy court rejected the FDIC's contention that reliance by the failed bank is deemed present as a matter of law. *Id.* at 759. The bankruptcy court agreed, however, citing *Figge* and *Cerar,* that "the FDIC need not prove reliance where the creditor and the debtor have acted jointly with the intent to defraud the banking examiners or the FDIC." *Id.* at 760. Because the FDIC had not pleaded that the failed institution and the debtor were both parties to the fraudulent conduct, the bankruptcy court ordered the FDIC to plead reliance by the failed institution. *Id.*

2

This court respectfully declines to adopt the prevailing rule that *D'Oench, Duhme* excuses the FDIC–Receiver from proving actual reliance by the failed institution or by bank regulators in a nondischargeability action brought under § 523(a)(2)(A). To invoke this estoppel rule to fill the factual void is to extend the reach of the doctrine beyond its original and even current moorings to perform a function for which the rule was not intended and which it cannot properly serve under bankruptcy law.

The *D'Oench, Duhme* doctrine is essentially a common law [14] rule of estoppel created by the Supreme Court as a manifestation of a "federal policy to protect [the FDIC] ... against misrepresentations as to the ... assets in the portfolios of the banks which [the FDIC] insures...." 315 U.S. at 457, 62 S.Ct. at 679. To be sure, the estoppel rule—even in its common law form— has been greatly enlarged since its comparatively modest genesis 49 years ago. *See Kilpatrick v. Riddle,* 907 F.2d 1523, 1527 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991) ("Since the initial statement of the doctrine in *D'Oench, Duhme,* the Court has expanded its preclusive effect well beyond the

---

**14.** The statutory counterpart of the common law rule is 12 U.S.C. § 1823(e). *See generally Royal Bank of Canada v. FDIC,* 733 F.Supp. 1091, 1095 (N.D.Tex.1990) (§ 1823(e) is codification of *D'Oench, Duhme* ) (citing *Olney Sav.*

*& Loan Ass'n v. Trinity Banc Sav. Ass'n,* 885 F.2d 266, 274 (5th Cir.1989)). Section 1823(e) was amended by FIRREA to enlarge the rights conferred upon bank regulators.

context of an oral 'secret agreement' between the bank and the borrower"). But a careful analysis of the purpose for the rule, its incremental development, and its present scope reveals the doctrine cannot be used to satisfy the reliance element of § 523(a)(2)(A).

The original *D'Oench, Duhme* case barred only the borrower's recourse to secret agreements asserted as a defense to a suit on a note brought by the FDIC in its corporate capacity. *Bowen v. FDIC*, 915 F.2d 1013, 1015 (5th Cir.1990). The courts have since enlarged the doctrine in myriad ways to further its general policies. The estoppel rule now applies to the FSLIC as well as to the FDIC, *see, e.g., FSLIC v. Murray*, 853 F.2d 1251, 1254 (5th Cir.1988); to affirmative claims brought against the FDIC as well as to defenses, *see, e.g., Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir.1989); to bridge banks authorized by the FDIC to acquire the assets and liabilities of a failed bank, *see, e.g., Bell & Murphy and Assocs. v. InterFirst Bank Gateway, N.A.*, 894 F.2d 750, 754–55 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); to private parties to whom the FDIC or FSLIC sells, assigns, or transfers the assets of a failed bank, *see, e.g., Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990); to claims based on widespread customs and practices as well as express unrecorded agreements, *see, e.g., FDIC v. Hamilton*, 939 F.2d 1225, 1229 (5th Cir.1991); to banks who participate in loans as well as to the lending bank, *see, e.g., Royal Bank of Canada v. FDIC*, 733 F.Supp. 1091, 1096–97 (N.D.Tex. 1990); and to transactions where the failed bank intended to incline participation in a venture other than execution of the note on which the FDIC sues, *see, e.g., id.* at 1096; *Fair v. NCNB Tex. Nat'l Bank*, 733 F.Supp. 1099, 1103 (N.D.Tex.1990).

Notwithstanding the pronounced expansion of the rule in recent years, the doctrine has not been employed to satisfy an ineluctable element of a cause of action. Many of the reported cases in which *D'Oench, Duhme* has come into play involved suits on promissory notes. *See, e.g., FDIC v. Laguarta*, 939 F.2d 1231 (5th Cir.

1991); *Hamilton*, 939 F.2d 1225; *RTC v. Murray*, 935 F.2d 89 (5th Cir.1991); *Patterson v. FDIC*, 918 F.2d 540 (5th Cir.1990); *Kilpatrick*, 907 F.2d 1523; *Porras*, 903 F.2d 379; *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244 (5th Cir.1990); *McLemore v. Landry*, 898 F.2d 996 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990); *Templin v. Weisgram*, 867 F.2d 240 (5th Cir.), *cert. denied*, 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 31 (1989); *FSLIC v. Lafayette Inv. Properties*, 855 F.2d 196 (5th Cir.1988); *Murray*, 853 F.2d 1251; and *FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986). The right of recovery arose independently of the doctrine and pursuant to the governing law of notes. *D'Oench, Duhme* did not fulfill an element of the substantive law that provided the right to relief. The same is true of non-promissory note cases where the doctrine estopped the defendant from avoiding liability that was otherwise established by law. In these instances *D'Oench, Duhme* was not employed, as in the present cases, to fulfill an affirmative proof element. *See, e.g., FSLIC v. Griffin*, 935 F.2d 691 (5th Cir.1991) (personal guaranties); *Buchanan v. FSLIC*, 935 F.2d 83 (5th Cir. 1991) (contract); *Clay v. FDIC*, 934 F.2d 69 (5th Cir.1991) (personal guaranties); *Union Federal Bank of Indianapolis v. Minyard*, 919 F.2d 335 (5th Cir.1990) (same); *FSLIC v. Cribbs*, 918 F.2d 557 (5th Cir.1990) (same); *Bell & Murphy*, 894 F.2d 750 (contract and tort); *FDIC v. Texarkana Nat'l Bank*, 874 F.2d 264 (5th Cir.1989), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990) (contract); *FDIC v. Cardinal Oil Well Serv. Co.*, 837 F.2d 1369 (5th Cir.1988) (personal guaranties); and *FDIC v. Castle*, 781 F.2d 1101 (5th Cir. 1986) (same).

*D'Oench, Duhme* essentially performs two functions. First, the estoppel rule bars defenses such as fraud, *see Cardinal Oil*, 837 F.2d at 1372; failure of consideration, *see McClanahan*, 795 F.2d at 516–17; securities fraud, *see Kilpatrick*, 907 F.2d at 1528; usury, *see Porras*, 903 F.2d at 380; breach of contract, *see Murray*, 935 F.2d at 93; and setoff, *see Hamilton*, 939 F.2d at 1229. Second, the rule prevents

affirmative claims such as fraud, *see Beighley*, 868 F.2d at 784 & n. 12; breach of fiduciary duty, *see id.;* breach of contract, *see Bell & Murphy*, 894 F.2d at 754–55; promissory estoppel, *see Bowen*, 915 F.2d at 1016; breach of duty of good faith and fair dealing, *see id.;* negligence, *see Clay*, 934 F.2d at 72–73; and unconscionability, *see id.*, that would diminish the extent of the plaintiff's right of recovery. Both roles are intended to enable the FDIC to enforce facially valid notes and other obligations contained in the files of regulated institutions without concern for undisclosed schemes or arrangements. Neither function permits the FDIC to assume a debtor cannot discharge an enforceable debt in bankruptcy.

Except in the bankruptcy—and specifically nondischargeability—context, the court has found no case that employs *D'Oench, Duhme* as a substitute for the proof necessary to satisfy an element of an affirmative claim. Why then does the FDIC–Receiver contend for its application here? At bottom, the FDIC seeks in contexts such as the present one to enforce its expectations. That is, it urges that it should be permitted to rely on an institution's records and to fully enforce facially unqualified instruments as written. This proposition finds support in the law. *See, e.g., Hamilton*, 939 F.2d at 1229–30 ("First, there is the concern that bank examiners safely may rely on the bank's records to ascertain all of the insolvent bank's obligations"); *Bowen*, 915 F.2d at 1016 ("Fundamentally, *D'Oench* attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books"). But the FDIC's unilateral expec-

tations do not alone fashion the rule of law in all circumstances. *See Buchanan*, 935 F.2d at 85 ("*D'Oench, Duhme* does not apply in all situations in which acceptance of a party's claim would defeat the government's expectations"). What the FDIC can lawfully expect is always circumscribed by contrary statutory and common law rules.

The bankruptcy discharge is one such fundamental limit. That *D'Oench, Duhme* estops defenses and claims that compromise the *enforceability* of a note or guaranty does not extend the doctrine to preclude *dischargeability* of the enforceable obligation. *Cf. Boebel*, 79 B.R. at 385 ("Whether the FDIC is holding a note which is enforceable against the Debtors is an entirely different issue from whether an enforceable note will be held to be nondischargeable in bankruptcy"). Enforceability and nondischargeability are distinct concepts in the law and represent separate stages in a creditor's attempt to collect on a particular obligation. To apply *D'Oench, Duhme* to a nondischargeability claim, this court must be able to say at once that the doctrine has relevance and that principles of dischargeability do not foreclose application of the rule. For reasons already explained, the court concludes the doctrine is not intended to satisfy an affirmative proof burden. And to apply *D'Oench, Duhme* to a § 523(a)(2)(A) nondischargeability claim is both to modify a statutory right and to run afoul of the admonition that § 523 be narrowly construed and applied strictly against the creditor and liberally in favor of the debtor.[15]

If this result leads, as the FDIC apparently contends it will, to at least some bankruptcy filings intended to accomplish

---

15. In a recent opinion, Judge Lake of the Southern District of Texas affirmed a bankruptcy court decision that declined to apply *D'Oench, Duhme* to a § 523(a)(2)(B) nondischargeability claim. *See In re Rotman*, 133 B.R. 843, 846 (S.D.Tex.1991). Section 523(a)(2)(B) makes nondischargeable a loan obtained by use of a materially false written statement respecting the debtor's or an insider's financial condition. Unlike § 523(a)(2)(A), § 523(a)(2)(B) expressly contains a requirement of reasonable reliance. *See* § 523(a)(2)(B)(iii). Therefore, portions of Judge Lake's reasoning are inapposite to the decision the court reaches today.

Pertinent to today's opinion, Judge Lake rejected the FDIC's invocation of *D'Oench, Duhme*

and § 1823(e) to satisfy the reliance element of § 523(a)(2)(B). Similar to the argument advanced in *Calhoun*, 131 B.R. at 759, the FDIC argued in *Rotman* that the failed predecessor bank could rely on a false statement as a matter of law, notwithstanding that the bank did not in fact rely, *see* 133 B.R. at 844. Judge Lake disagreed, holding the type of reliance contemplated by § 523(a)(2)(B)(iii) is not akin to that "to which the FDIC is entitled under *D'Oench, Duhme* and § 1823(e)." *Id.* at 846. He declined to accept a contention that "loses sight of what the *D'Oench, Duhme* doctrine is," *id.*, noting

what *D'Oench, Duhme* otherwise prevents, the proper recourse is to ask Congress to amend § 523(a)(2)(A).[16] This court will not effectively rewrite this provision of the Code by judicial fiat.

## IV

■ Having decided the FDIC–Receiver was required to prove reliance in fact, and because the FDIC–Receiver does not challenge the bankruptcy court's finding that the FDIC–Receiver could not prove such reliance, the court reverses the judgments against James and Vernon. The court also remands both cases to the bankruptcy court for consideration of the FDIC–Receiver's claim of nondischargeability predicated upon 11 U.S.C. § 523(a)(6). The bankruptcy court specifically rejected this theory as a basis for holding nondischargeable the New York Avenue property loan. *See* 113 B.R. at 310. It did not reach the question, however, with regard to the Cedar Springs and Celestial/Montfort debts. *See id.* at 308. Unlike § 523(a)(2)(A), which requires proof of reliance, § 523(a)(6) mandates proof of a willful and malicious injury by the debtor to another entity or to the property of another entity. *See Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480, 486 (5th Cir.1986). This requires evidence of intentional conduct undertaken without just cause or excuse. It does not obligate the FDIC to prove reliance, as such. Therefore, the court's holding today that *D'Oench, Duhme* is unavailable to the FDIC–Receiver does not preclude a finding that § 523(a)(6) renders the debts nondischargeable.

*Reversed and remanded.*

---

neither the Supreme Court in *D'Oench, Duhme* nor Congress in § 1823(e) said anything "about abrogating statutory requirements such as those imposed by 11 U.S.C. § 523(a)(2)(B), which the FDIC, like any other creditor in a bankruptcy proceeding, must shoulder to deny a debtor his normal right to a discharge." *Id.*

**16.** At least one bill, H.R. 3982, has been introduced in Congress to effect this. If enacted, the bill would amend § 523 to provide that "reliance by a creditor will not be required to establish an exception to discharge if the creditor is a financial regulatory agency that is a successor to a bank, savings association, or credit union." H.R. 3982, 101st Cong., 2d Sess. (1990). The court has not considered the introduction of the bill, however, as evidence of the FDIC's views concerning the present scope of § 523(a)(2)(A).