**In re DISTRICT 65, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Debtors.**

**NEW YORK PROPERTY HOLDING CORP., Appellant,**

v.

**DISTRICT 65, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Appellee.**

**No. 94 Civ. 660 (KTD).**

United States District Court, S.D. New York.

June 26, 1995.

---

Parker Chapin Flattau & Klimpl, New York Property Holding Corp., New York City (Joel Lewittes, of counsel), for appellant.

Warshaw Burstein Cohen Shlesinger & Kuh Dist. 65, United Auto. Aeropsace and Agri. Implement Workers of America, UAW, New York City (Donald L. Kuba, of counsel), for appellee.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Appellee, District 65, United Automobile Aerospace and Agricultural Implement Workers of America, UAW, ("Debtor" or "District 65") moves to dismiss New York Property Holding Corporation's ("Purchaser" or "NYPHC") appeal from two orders of the United States Bankruptcy Court for the Southern District of New York rendered by the Honorable Francis G. Conrad, USBJ.

The first order, dated December 2, 1993, found NYPHC in default of its contract with District 65 for the purchase of property located at 13–25 Astor Place, New York, New York (the "Default Order"). The second order, dated December 2, 1993, approved the sale of the designated Property to IOWNA Corporation (the "Sale Order"). Debtor moves to dismiss on the basis that NYPHC did not properly appeal the default issues because it only appealed from the sale order, and that the issue of the sale of the Property to another purchaser is moot because the sale had already been consummated with a good faith purchaser.

For the following reasons, Debtor's motion to dismiss the appeal of the Default Order is denied, but its motion to dismiss the Sale Order as moot is granted.

### BACKGROUND

District 65 is an unincorporated business association organized as a labor union, which owned and operated its union headquarters at 13–25 Astor Place, New York, New York (the "Property"). On January 20, 1993, District 65 filed a voluntary Chapter 11 petition for relief, pursuant to 11 U.S.C. § 101 et seq. In re District 65, United Aerospace and Agricultural Implement Workers of America, No. 93–B–40338 at 2 (Bankr.S.D.N.Y. 1994).

On June 18, 1993, District 65 and NYPHC signed a contract for the sale of the Property for $5,650,000, subject to approval by the Bankruptcy Court for the Southern District of New York. In re District 65, No. 93–B–40338 at 2. NYPHC made a $250,000 deposit under the contract prior to the closing, to be held in escrow and applied as part of the purchase price if the transaction was completed. (Appellee's Mot. Dismiss at 3). The contract also included a "time of the essence" provision against NYPHC and further provided that if NYPHC defaulted, Debtor was entitled to cancel the contract and to retain the $250,000 deposit as liquidated damages. In re District 65, No. 93–B–40338 at 3. There was no provision in the contract which conditioned the closing on NYPHC successfully acquiring financing.

On July 6, 1993, after notice and a hearing, the Bankruptcy Court approved the contract and signed an order authorizing the sale of the Property in accordance therewith. *Id.* at 2.

The closing date had been originally set for August 20, 1993. *Id.* During the period between August 20, 1993 and October 22, 1993, District 65 and NYPHC corresponded regularly in an effort to close the contract. *Id.* at 3. On September 29, 1993, Debtor applied to the Bankruptcy Court for an order extending the time to close, with time of the essence against NYPHC. *Id.* On October 7, 1993, the Bankruptcy Court approved Debtor's request, and authorized Debtor to close the NYPHC contract by October 29, 1993. *Id.* On October 11, 1993, Debtor rescheduled the closing date for October 22, 1993, and notified NYPHC of the closing date. *Id.* On October 13, 1993, NYPHC sought an extension from District 65. *Id.* at 4. Debtor refused to extend the closing date. *Id.* Apparently, NYPHC had difficulty acquiring the funds necessary for the purchase, resulting from the fact that its financing was subject to the vacancy of the premises. *Id.* After the premises were vacant, NYPHC would require an additional seven days before it could "draw down" the financing. *Id.* However, the contract only required the premises be vacant at the time of closing, and thus, District 65 did not fully vacate the property until October 21, 1993, one day before the scheduled closing date. *Id.*

Debtor treated NYPHC's rejection of the October 22, 1993 closing date as an anticipatory breach of the sale contract. *Id.* By an Order to Show Cause dated November 16, 1993, Debtor sought a declaration from the Bankruptcy Court that NYPHC had defaulted on the contract; an authorization for the Debtor to retain NYPHC's $250,000 deposit; and authorization to sell the Property to a new purchaser, IOWNA Corporation ("IOWNA"). (Appellee's Mot. Dismiss at 4).

A hearing was held in the Bankruptcy Court on December 2, 1993. By the hearing date, Debtor had negotiated the terms of a second contract with IOWNA. *In re District 65,* No. 93–B–40338 at 4. At the hearing, NYPHC was afforded a final opportunity to purchase the property, but again reported difficulty in acquiring all the funds necessary for purchase. *Id.* As a result, NYPHC was unable to close the contract.[1] *Id.*

In its Memorandum Decision, the Bankruptcy Court held that NYPHC had defaulted on the contract, and that Debtor had properly terminated the contract and withheld the $250,000 deposit as liquidated damages. *Id.* at 15–16. The Bankruptcy Court issued two orders dated December 2, 1993. The Default Order stated that the contract for sale of the Property had been defaulted upon by NYPHC, and that District 65 properly terminated the contract. The Sale Order authorized Debtor to sell the Property to IOWNA and provided that the closing must occur within thirty days, with time of the essence against the purchaser.

On December 15, 1993, NYPHC filed a timely appeal of the Bankruptcy Court's rulings. Of the six issues set forth by NYPHC on appeal, the following three concerned the Bankruptcy Court's declaration that NYPHC had defaulted on the sale contract: (1) whether the Bankruptcy Court erred in concluding that NYPHC had defaulted on the contract; (2) whether the Bankruptcy Court erred in concluding that the Debtor was reasonable in unilaterally scheduling October 22, 1993 as a time of the essence closing date on the contract; and, (3) whether the Bankruptcy Court erred in declaring NYPHC in default without considering Debtor's inability to vacate the premises until October 21, 1993. The other three issues on appeal concerned the authorization of the sale of the property to IOWNA: (1) whether the Bankruptcy Court erred in determining that the Debtor's contract with IOWNA was the best offer for the property; (2) whether the Bankruptcy Court erred in approving the sale of the Property to IOWNA without hearing any testimonial evidence; and (3) whether the

---

1. The funds had still not been assembled by the hearing date, December 2, 1993, even though the property had been vacant for over one month. *In re District 65,* 93–B–40338 at 4. The contract did not provide any indication that it required vacancy prior to the closing, nor did it provide that an exception would be made for financing. *Id.*

Bankruptcy Court erred by approving Debtor's application to sell the Property to IOWNA without affording NYPHC the opportunity to demonstrate to NYPHC that its contract was the best offer for the Property.

## DISCUSSION

### A. THE DEFAULT ISSUES

■ Fed.R.Bankr.P. 8001(a) requires that a notice of appeal provide specification and a description of the final judgment, order, and decree of the bankruptcy court from which the appeal is taken. Nevertheless, the Bankruptcy Code states that the

> failure of an appellant to take any step other than the timely filing of the notice of appeal does not affect the validity of the appeal, but is grounds only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal.

Fed.R.Bankr.P. 8001(a).

The rule governing bankruptcy appeals is derived from Fed.R.App.P. 3(c). The Second Circuit has articulated the requirements of the contents of the notice of appeal: "The requirement of Fed.R.App.P. 3(c) that the notice of appeal 'shall designate the judgment, order or part thereof appealed from' serves as 'a means of identification, and not as a step in appellate pleading.'" *Matarese v. LeFevre*, 801 F.2d 98, 105 (2d Cir.1986) (quoting *Bancroft Navigation Co. v. Chadade Steamship Co.*, 349 F.2d 527, 528 (2d Cir. 1965)).

In one of the few cases dealing with this issue, the Bankruptcy Court for the Northern District of Texas rejected an argument that merely incorrectly naming the order from which the debtor appealed would preclude jurisdiction on that appeal. *In re Smith*, 133 B.R. 800, 803–804 (Bankr. N.D.Tex.1991). In *In re Smith*, the appellant's notice of appeal stated that it was appealing from "the Order on Motions for New Trial, for Reconsideration and Additional Findings of Fact and Conclusions of Law of the Bankruptcy Court," but the appellant never expressly appealed the final judgment of the bankruptcy court. *In re Smith*, 133

B.R. at 804. The court reasoned that the failure to properly designate the order from which the Debtor appealed was irrelevant if it is clear which judgment the appellant is appealing. *Id.* (citations omitted).

It is clear that, in the present case, NYPHC was appealing from the default holding as well as the authorization of sale. The Notice of Appeal, dated December 15, 1993, states that NYPHC appealed from "the final order of the Honorable Francis G. Conrad," which granted Debtor a "declaration that its contract with NYPHC had been defaulted, and for authority to effect a certain sale to IOWNA Corp. of real property identified in the order." (Notice of Appeal at 1). Furthermore, the statement of issues prepared by NYPHC, dated December 23, 1993, clearly indicated NYPHC's intention to appeal from the declaration of default in addition to the authorization of sale. Additionally, NYPHC alleges that it was never served the orders, and that the bankruptcy file contained only the sale order. (Appellant's Mem.Opp.Mot.Dismiss at 6). NYPHC allegedly believed that the Sale Order incorporated the complete relief granted by the Bankruptcy Court to Debtor. In that order, the court stated that it was ruling on the hearing "(a) to declare a Certain Contract Dated June 18, 1993 with [NYPHC] Terminated By Reason of Default and (b) to Approve Sale of Real Property" and that "the Application be and hereby is granted in all respects and the NYPHC objection be and hereby is overruled and denied." (Appellant's Mem.Opp.Mot.Dismiss at 7). Based on this language, and the fact that the Sale Order was the only order in the file, it is reasonable for NYPHC to have been confused as to the substance of the orders.

Thus, it is clear that NYPHC intended to appeal from the default order, and its mere technical error will not render its appeal invalid on the default issues.

### B. THE SALE ISSUES [2]

■ Section 363(m) of the Bankruptcy Code provides that:

> appeal by a statement acknowledging that they

---

2. NYPHC seems to have dropped these issues on

A reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Once a sale is consummated with a good faith purchaser, where a stay of the sale had not been obtained, any attempt to appeal the sale is moot. *U.S. v. Salerno*, 932 F.2d 117, 123 (2d Cir.1991); *Chateaugay Corp., Reomar, Inc. v. LTV Co. and Airloeb Co.*, 1993 WL 159969 (S.D.N.Y. 1993); *Newspaper and Mail Deliverers' Union of New York and Vicinity v. Imperial News Co.*, 1991 WL 243458 (S.D.N.Y.1991). Section 363(m) offers "finality to judgments by protecting good faith purchasers, the innocent third parties who rely on the finality of the bankruptcy judgments in making their offers and their bids." *In re Stadium Management*, 895 F.2d 845, 847 (quoting *In re Tri–Cran, Inc.*, 98 B.R. 609, 617 (Bankr. D.Mass.1989)). Moreover, the court must dismiss the appeal of a sale once it has been consummated because there is no remedy that it can fashion even if it would have determined the issues differently. *Id.* at 847–48.

■ In the present case, NYPHC did not obtain a stay of the sale, and the sale had already been consummated. Under § 363(m), only where the sale was done in bad faith can it be reviewed or modified absent a stay. *See In re Brookfield Clothes Inc.*, 31 B.R. 978, 982 (Bankr.S.D.N.Y.1983). There is no allegation that IOWNA is not a good faith purchaser. Therefore, the sale of the Property to IOWNA cannot be reversed or modified.[3]

Because the sale of the Property to IOWNA has been consummated, the appeal of the Sale Order must be declared moot.

### CONCLUSION

Debtor's Motion to Dismiss Appellant's appeal of the Default Order is denied. Debtor's Motion to Dismiss Appellant's appeal of the Sale Order as moot is hereby granted.

SO ORDERED.

---

do not seek to purchase the Property, and asserting that the only pertinent issue on appeal is whether NYPHC defaulted on the contract. Nevertheless, because of the dispute between the parties over which order is being appealed, and also because one half of the issues on appeal are devoted to the validity of the sale of the Property to IOWNA, I will address these issues.

**3.** NYPHC has conceded this point by acknowledging that it will no longer be able to purchase the property. (Appellant's Mem.Opp.Mot.Dismiss at 8).