**In re Donald F. & Wanda L. BOEBEL, Debtors.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Donald F. & Wanda L. BOEBEL, Defendants.**

**Bankruptcy Nos. 85 B 14003, 86 A 1327.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 19, 1987.

---

Mark J. Chalfen, Dehaan & Richter, P.C., Chicago, Ill., for plaintiff.

Matthew P. Gerdisch, Law Offices of Jeffrey P. White, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

SUSAN PIERSON DeWITT, Bankruptcy Judge.

This matter comes before the Court on the Motion of the Federal Deposit Insurance Corporation ("FDIC") for Summary Judgment and the Objection to Motion for Summary Judgment filed by the Debtors Donald F. and Wanda L. Boebel ("Boebels"). A Memorandum in Support of Its Motion for Summary Judgment was filed by the FDIC. The Debtors filed a Memorandum in Support of their Objection to FDIC's Motion for Summary Judgment. The FDIC filed Reply briefs to both the Objection to Motion for Summary Judgment and Boebel's Memorandum in Support of their Objection to the Motion for Summary Judgment. Jurisdiction is based on 28 U.S.C. § 157(b)(2)(I). The FDIC's Motion for Summary Judgment is denied.

## THE FACTS

The Plaintiff, FDIC, in its corporate capacity, filed a Complaint to Determine Dischargeability against the Boebels. Counts I and III of the FDIC's Complaint are predicated upon 11 U.S.C. § 523(a)(2)(A), which excepts from discharge, debts incurred through the use of false pretenses, a false representation, or actual fraud. The FDIC's Motion for Summary Judgment is directed to those two Counts.

On December 13, 1982, the Defendants went to the Linn County State Bank ("Bank") in Linneus, Missouri to obtain a loan of $15,000.00. At the time, the Defendants had 260 acres or about 4,000 bushels of soybeans growing in fields located a few miles from the Bank. The Defendants met with Mr. Duncan and Mr. Smith at the Bank to discuss the loan. The Promissory Note ("Note") and the Security Agreement were subsequently prepared by a Bank representative. The Defendants state that they pointed out to the Bank's representative that the Security Agreement said "3500 bu. stored soybeans," but that the soybeans were still standing in the field. The Defendants also state that Mr. Duncan informed them that it did not matter whether the soybeans were in storage or in the field. The Defendants then signed the Note and the Security Agreement.

In the Note, the Boebels pledged to the Bank a security interest in "soybeans now owned." In the Security Agreement, the Defendants pledged as collateral "3500 bu.

stored soybeans" which were "all now owned," and which would be kept at their residence, to secure their debt to the Bank. The Boebels also represented in the Security Agreement that they would preserve and insure the collateral.

In the Answer to the Complaint, the Defendants admit that they did not make payments to reduce the Note and that the Bank obtained a Judgment on the Note. Further, the Boebels admit that the soybeans were not in storage as represented when the Note and Security Agreement were signed, and that they did not have any stored soybeans at the time. The Boebels allege, however, that they told one of the Bank representatives that the soybeans were not in storage at the time they signed the Note and Security Agreement. The crop was ultimately destroyed by continuous rains and never harvested. Moreover, the Boebels had not obtained crop insurance, thus the Bank's security interest in the crop was without value.

The Bank was closed on July 19, 1985. The FDIC was appointed receiver and then purchased, in its corporate capacity, certain assets of the Bank, including the Note and Security Agreement of the Boebels. The closed Bank's books, records, and files do not contain any written agreement which would contradict, modify, or alter the written terms of the Boebels' Note and Security Agreement.

## THE STANDARD FOR SUMMARY JUDGMENT

To prevail in its Motion for Summary Judgment, the FDIC must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure made applicable to adversary proceedings in the bankruptcy court by Bankruptcy Rule 7056. Rule 56 reads, in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In a motion for summary judgment, the burden is on the moving party to show that no issue of material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Further, all doubts regarding issues of material fact must be viewed in a light favoring the non-moving party. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1339 (7th Cir.1985).

### 11 U.S.C. § 523(a)(2)(A)

■ Any debt obtained by "false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition," is rendered nondischargeable under 11 U.S.C. § 523(a)(2)(A). Proof must be made of actual fraud as opposed to fraud implied in law. To prove actual fraud, the plaintiff must show (1) that the debtor made a materially false representation; (2) that it was made with the intent to deceive; and (3) that the creditor reasonably relied on the false representation. *In re Bogstad*, 779 F.2d 370, 373 (7th Cir.1985). The plaintiff has the burden of proving each of these elements by clear and convincing evidence. *In re Brink*, 27 B.R. 377, 378 (Bankr.W.D.Wis.1983).

## THE ELEMENTS OF RELIANCE AND INTENT

The FDIC submits that summary judgment is proper in this case because there are no genuine issues of material fact. The FDIC asserts that it relied on the face of the Note and Security Agreement when it purchased the assets of the closed Bank and its reliance on those documents is a matter of law. Further, the FDIC asserts that the Debtors had the requisite fraudulent intent to render this debt nondischargeable and that their intent to deceive may be inferred from the Debtor's conduct. With the other elements necessary to establish fraud not in dispute, the FDIC argues that summary judgment may be entered in its favor.

The FDIC argues that the Boebels are estopped from asserting a defense against the FDIC based upon any alleged oral agreement or understanding with a Bank

representative concerning their pledge of collateral. The FDIC points to the doctrine first enunciated by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) which would preclude the Boebels from asserting unwritten agreements or understandings they had with the Bank's representative as a basis of any defense. In *D'Oench*, the FDIC sued the maker of a note who defended on the basis of certain unwritten understandings regarding the note. The Supreme Court rejected the maker's defenses, and stated:

> [T]he test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangment whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled. 315 U.S. 447 at 460, 62 S.Ct. at 681.

The FDIC, in its corporate capacity, is now statutorily protected by 12 U.S.C. § 1823(e) which provides in relevant part that:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

The goal of this section is to allow the FDIC, in appraising the worth and collectibility of assets it is purchasing from troubled banks, to rely on the bank's records. *FDIC v. Powers*, 576 F.Supp. 1167, 1171 (N.D.Ill.1983). Thus, the FDIC asserts that any defense to an obligation based on purported conversations or oral agreements with a representative of the closed Bank, is not enforceable against the FDIC. The FDIC may ignore any alleged side agreement which imposes conditions on the assets the FDIC acquires from failing banks unless the agreement conforms strictly to the requirements of § 1823(e). *FDIC v. O'Neil*, 809 F.2d 350, 354 (7th Cir.1987); *FDIC v. Hoover-Morris Enters.*, 642 F.2d 785 (5th Cir.1984); *FDIC v. Merchants Nat' Bank*, 725 F.2d 634, 639 (11th Cir.1984).

Thus, cases which have followed *D'Oench* or which have considered the subsequently enacted 12 U.S.C. § 1823(e), have continually insulated the FDIC from claims and defenses predicated upon unwritten understandings and alleged side agreements which would diminish the interest of the FDIC in the assets it acquires from a troubled bank. *E.g., FDIC v. Powers*, 576 F.Supp. 1167 (N.D.Ill.1983); *FDIC v. Leach*, 525 F.Supp. 1379 (E.D.Mich.1981). In effect, the section gives the FDIC rights similar to a holder in due course with respect to the assets it purchases from failing banks. *In re Bombard*, 59 B.R. 952, 955 (Bankr.D.Mass.1986) (citing, *FDIC v. Balistreri*, 470 F.Supp. 752, 756 (E.D.Wis.1979)). "Agreements that would be valid and binding as between the parties or as against third parties may be invalid as against the FDIC." *FDIC v. Powers*, 576 F.Supp. 1167, 1169 (N.D.Ill.1983).

■ The federal policy in banking law is that the FDIC should not be bound by anything outside a bank's loan documents when it purchases those documents. *E.g., FDIC v. MM & S Partners*, 626 F.Supp. 681 (N.D.Ill.1985). Because of the protection given the FDIC by § 1823(e), the FDIC may rely upon the records of the bank and need not go beyond the face of those records. *FDIC v. First Mortgage Investors*, 485 F.Supp. 445, 451 (E.D.Wis.1980). The Bank's records indicate that the collateral for the Boebel's loan is "3500 bu. stored soybeans." The FDIC is entitled to rely on those records and by virtue of 12 U.S.C. § 1823(e), the FDIC has met the element of reliance as a matter of law. *In*

re *Bombard,* 59 B.R. 952, 955 (Bankr.D. Mass.1986).

Under 12 U.S.C. § 1823(e), to the extent that the Boebels' conversations with the Bank representative constituted an "agreement," the Debtors may not assert the substance of those conversations as a defense to the enforcement of the Note. The Debtors, however, have not alleged that they made an "agreement" with respect to the Note and Security Agreement. Rather, it appears the Debtors made a disclosure that the soybeans were not stored as indicated, but were still growing and would be stored when harvested. Indeed, it is difficult to imagine how the parties would think that such a disclosure with respect to the collateral could impact on the Debtors' obligation to make payment on the Note.

In addition to reliance, intent is a critical element in a fraud case. Although the conversations with the Bank representative regarding the collateral may not be used to rebut the element of reliance afforded the FDIC by § 1823(e), the conversations certainly go to the Debtors' state of mind at the time the loan was obtained. Whether the Debtors intended to deceive the Bank in obtaining the loan is a question of fact. *Carini v. Matora,* 592 F.2d 378, 380 (1979). "Intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to make a loan." *In re Kimzey,* 761 F.2d 421 (7th Cir.1985) (citing *Carini,* 592 F.2d at 380). However, the intent to deceive is more properly inferred after hearing all the evidence surrounding the transaction in question. In determining the dischargeability of this debt, all evidence which tends to show the Debtors' intent must be considered by the Court.

While many defenses are unavailable against the FDIC on a note purchased by it in its corporate capacity, that does not, in itself, mean that the debt evidenced by the note is nondischargeable in bankruptcy. The fact that certain defenses may not be raised and that the FDIC's reliance on the records is provided by statute, does not mean that the FDIC has met its burden of proving by clear and convincing evidence

that every element necessary for fraud exists.

Whether the FDIC is holding a note which is enforceable against the Debtors is an entirely different issue from whether an enforceable note will be held to be nondischargeable in bankruptcy. Although 12 U.S.C. § 1823(e) makes the FDIC's reliance on the Note a matter of law, it does not relieve the FDIC from proving the Debtors' intent to deceive as an element of fraud in this nondischargeability proceeding. Summary Judgment cannot be granted when the Debtors' intent is in dispute.

THEREFORE, IT IS HEREBY ORDERED that the FDIC's Motion for Summary Judgment is denied.