**In re Albert and Shirlee YARBROW,
Debtors.**

**Albert YARBROW, Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE
CORPORATION, Appellee.**

**BAP No. CC–92–1315 MeJO.
Adv. No. 91–60639 BR.
Bankruptcy No. LA 90–28915 BR.**

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 22, 1992.

Decided Jan. 22, 1993.

Robert L. Kinkle, Long Beach, CA, for Yarbrow.

John F. Neupert, Portland, OR, for FDIC.

Before MEYERS, JONES and OLLASON, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

On appeal is a summary judgment that the claim of the Federal Deposit Insurance Corporation ("FDIC") against Albert Yarbrow ("Debtor") is nondischargeable. We AFFIRM.

### II

### FACTS

In early 1984, the State Federal Savings and Loan Association of Corvallis, Oregon (the "Association"), had a troubled loan in excess of $10 million secured by an abandoned Air Force base housing project located in Roswell, New Mexico (the "Roswell property"). Eventually, the Association accepted a deed in lieu of foreclosure and became the owner of the property. Lawrence Waters ("Waters"), then president of the Association, desired to find a purchaser for the Roswell property.

At Water's request, Yarbrow, a loan broker, introduced Thomas Nevis ("Nevis") to Waters in March 1984. Nevis was a private developer who needed to refinance three of his properties. At a March 15, 1984 meeting Yarbrow, Waters, Nevis and others agreed that in exchange for $16 million in loans on Nevis' properties, Nevis would acquire the Roswell property from the Association for $13.5 million. The parties, including Yarbrow, agreed that the Roswell property would be purchased with a $1.3 million downpayment, with the balance to be financed by the Association.

Pursuant to the "loans-to-one-borrower" limitation of 12 C.F.R. § 563.9–3 (1984), a savings and loan association can loan to one borrower no more than ten percent of the association's withdrawable accounts or the association's net worth, whichever is less. With the Roswell property loan, the

total of the loans to Nevis would have exceeded the Association's regulatory lending limit.

In order to evade the limitation of Section 563.9–3, Yarbrow offered to act as the borrower on the Roswell property loan as a nominee for Nevis. Yarbrow formed a California corporation, Roswell Properties, Inc. ("RPI"), to act as the nominal purchaser of the Roswell property. Yarbrow owned RPI's stock and was chairman of its board of directors.

RPI bought the Roswell property with a $12.2 million loan from the Association and a $1.3 million downpayment. The downpayment was paid by Nevis from funds obtained through the Association for three of his properties. Yarbrow was paid $200,000 for his part in the deal.

In 1985, the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed receiver for the Association. The FDIC subsequently became FSLIC's successor in interest to the Association's claims against Yarbrow and others. After RPI defaulted on its loan obligation to the Association, the FDIC foreclosed on the Roswell property on July 20, 1987. On September 7, 1987, a deficiency judgment was entered against RPI in the sum of $4,019,621.59. The deficiency judgment remains almost entirely unsatisfied.

The FDIC then brought a civil action in the United States District Court for the District of Oregon against Yarbrow, asserting, among other claims, a claim under the alter ego doctrine holding Yarbrow liable for the deficiency judgment against RPI. During the pendency of this lawsuit, a criminal indictment was obtained against Yarbrow in the federal district court in Oregon. Yarbrow was convicted by a jury for conspiracy to defraud the FDIC and for wire fraud in connection with the Roswell property transaction.

Based upon collateral estoppel arising from this conviction, the FDIC obtained a civil judgment against Yarbrow in the Oregon district court on its claim that RPI was merely the alter ego of Yarbrow.

Yarbrow filed a bankruptcy petition and the FDIC brought a nondischargeability complaint against him under §§ 523(a)(2)(A), (a)(2)(B) and (a)(6) of the Bankruptcy Code ("Code"). The bankruptcy court granted summary judgment in favor of the FDIC, holding that the facts showing nondischargeability were established in the criminal conviction and civil court judgment. The court determined that $4,019,621.59 of the debt owed to the FDIC was nondischargeable. Yarbrow appeals.

## III

### STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*. *In re Center Wholesale, Inc.*, 788 F.2d 541, 542 (9th Cir.1986); *In re Orosco*, 93 B.R. 203, 207 (9th Cir. BAP 1988). The reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *In re Orosco, supra,* 93 B.R. at 206–07; *In re Tilbury,* 74 B.R. 73, 76 (9th Cir. BAP 1987), *aff'd,* 851 F.2d 361 (9th Cir.1988).

## IV

### DISCUSSION

A. *Findings of Fraud and Proximate Cause*

Yarbrow argues that the bankruptcy court erred in determining that the civil judgment issued by the district court collaterally estopped Yarbrow from denying fraud or proximate cause. In the civil action, the district court found Yarbrow liable for the deficiency judgment against RPI. In its written Opinion, the court determined:

> Yarbrow's conviction establishes that Yarbrow formed RPI as a corporation without assets and with 'no purpose other than to be nominee for Nevis on the Roswell loan, i.e., a "shell" corporation.' ... RPI was merely an 'alter ego' for

Yarbrow and Nevis, an undercapitalized sham corporation formed solely for fraudulent and illegal purposes.... Waters was unwilling and unable to cause the Association to make the Roswell loan to Nevis directly or through one of his corporations, Yarbrow volunteered to form a shell corporation to act as a 'straw borrower' for Nevis and facilitate the sale, Yarbrow formed RPI for this purpose, and the Association officers agreed with this scheme and acted defraud [sic] the Association and make false entries n [sic] it [sic] records.

The court found "the causation element satisfied."

■ Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to a prior litigation. *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The district court found Yarbrow liable for the deficiency judgment by applying New Mexico law in order to disregard the corporate entity of RPI.

■ Pursuant to New Mexico law, three requirements must be satisfied to pierce a corporate veil: (1) a showing of instrumentality or domination; (2) improper purpose; and (3) proximate causation. *Scott v. AZL Resources, Inc.*, 107 N.M. 118, 753 P.2d 897, 900 (N.M.1988); *Morrow v. Cooper*, 113 N.M. 246, 824 P.2d 1048, 1051 (N.M.Ct.App.1991). Instrumentality or domination means proof that the subservient corporation functioned under the domination and control and for the purposes of some dominant party. *Scott v. AZL Resources, Inc., supra*, 753 P.2d at 900. However, mere control by the entity is not enough to warrant piercing the corporate veil. Some form of moral culpability attributable to that party, such as use of the corporation to perpetrate a fraud, is also required. 753 P.2d at 901.

■ Because the district court's finding of fraud was necessary for the court's decision to pierce the corporate veil, that finding is conclusive in the later bankruptcy proceedings. Further, because proximate cause also is one of the three necessary elements to pierce a corporate veil, the determination cannot be disputed later in the bankruptcy court.

■ Yarbrow claims that there was a superseding cause of the loss to the FDIC. He contends that James Jordan, an officer of the Association, wrongfully directed the Association to pay off a senior lien on the Roswell property. We have found no evidence of this alleged conduct in the record. On September 15, 1992, this Panel issued an order directing Yarbrow to supplement his appellate brief by referencing his statement of facts to the record, as required under Fed.R.Bankr.P. 8010(a)(1)(D). Yarbrow never complied with this order. An appellate court may decline to consider an argument when the necessary record is not before it. *In re Ashley*, 903 F.2d 599, 603 n. 1 (9th Cir.1990). The Panel will not consider Yarbrow's argument that there was a superseding cause to the loss.

### B. *The Element of Reliance*

Yarbrow next argues that the FDIC did not present evidence that the Association relied upon Yarbrow's representations when it made the loan. Since Waters, the president of the Association, allegedly was part of the conspiracy to defraud, Yarbrow argues that it is incongruous to state that the Association justifiably relied on Yarbrow's misrepresentations.

■ Although § 523(a)(2)(A) does not expressly list reliance as a necessary element for nondischargeability, the Panel in *In re Howarter*, 114 B.R. 682, 685–86 (9th Cir. BAP 1990), held that by referring to the common law causes of action of "false pretenses, a false representation or actual fraud," subsection A incorporates the elements of proof required by the common law, one of these elements being reliance. *See also In re Kirsh*, 973 F.2d 1454 (9th Cir.1992) (under § 523(a)(2)(A) a creditor must prove justifiable reliance).

■ The bankruptcy court in this case determined that under the *D'Oench, Duhme* doctrine, the element of reliance

under § 523(a)(2) was satisfied as a matter of law. In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that the maker of a note could not present as a defense to its enforcement a secret agreement between the note's maker and the lending bank when the bank had been taken over by the federal insurer. 315 U.S. at 459, 62 S.Ct. at 680. The Supreme Court further held that there was a federal policy to protect the FDIC and the public funds which it administers against misrepresentations about the assets of insured banks. 315 U.S. at 459, 62 S.Ct. at 680. The Court stated that the test was whether the note was designed to deceive the creditors of the public authority or would tend to have that effect. 315 U.S. at 460, 62 S.Ct. at 680. The general policy of the *D'Oench, Duhme* doctrine is to favor the interest of depositors and creditors of a failed bank, who cannot protect themselves over the interests of borrowers, who can. *In re Century Centre Partners Ltd.*, 969 F.2d 835, 839 (9th Cir.1992).

The *D'Oench, Duhme* doctrine is now codified in 12 U.S.C. § 1823(e). *In re Figge*, 94 B.R. 654, 668 (C.Cal.1988). This statute provides that no agreement shall be valid against the FDIC unless it is in writing, was executed at the time the asset was acquired, was approved by the board of directors of the depository institution as reflected in the minutes and has been continuously an official record of the depository institution. 12 U.S.C. § 1823(a).

The court in *Figge* and other courts have applied the *D'Oench, Duhme* doctrine to nondischargeability suits, holding that the FDIC need not prove reliance where the creditor and the debtor have acted jointly with the intent to defraud the banking examiners or the FDIC. *See, e.g., In re Culp*, 140 B.R. 1005, 1013–14 (Bkrtcy. N.Okla.1992); *In re Calhoun*, 131 B.R. 757, 760 (Bkrtcy.D.C.1991); *In re Lefeve*, 131 B.R. 588, 594 (Bkrtcy.S.Miss.1991); *In re Stefanoff*, 106 B.R. 251, 256 (Bkrtcy. N.Okla.1989); *In re Cerar*, 97 B.R. 447, 450 (C.D.Ill.1989); *In re Boebel*, 79 B.R. 381, 384 (Bkrtcy.N.Ill.1987).

However, the use of the *D'Oench, Duhme* doctrine in nondischargeability actions is not a settled issue of law. The district court in *In re Smith*, 133 B.R. 800 (N.D.Tex.1991), declined to adopt the prevailing rule that the *D'Oench, Duhme* doctrine excuses the FDIC from proving actual reliance in a nondischargeability action. 133 B.R. at 808. The *Smith* court determined that notwithstanding the expansion of the *D'Oench, Duhme* rule in recent years, the doctrine has never been employed to satisfy a necessary element of a cause of action. 133 B.R. at 809.

The sole fact that application of the *D'Oench, Duhme* doctrine to nondischargeability actions is relatively new will not prevent us from applying the doctrine. We believe that use of the *D'Oench, Duhme* doctrine in § 523(a) actions is clearly in line with the doctrine's policy to protect the FDIC and the public funds it administers against misrepresentations concerning the assets of insured banks. *D'Oench, Duhme & Co. v. FDIC, supra*, 315 U.S. at 459, 62 S.Ct. at 680. The need to protect FDIC funds is especially apparent now, in light of the recent devastating losses involved in the failures of many saving and loan associations in this country.

The use of the *D'Oench, Duhme* rule in § 523(a)(2)(B) nondischargeability suits was rejected in *In re Rotman*, 133 B.R. 843 (S.D.Tex.1991). In rejecting the doctrine, the district court in *Rotman* relied on the legislative history of the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act, enacted by Congress in 1990. The House Committee on the Judiciary recommended inclusion of a provision creating an exemption from the reasonable reliance requirement in § 523(a)(2)(B)(iii). This proposed amendment was not included in the final version of the 1990 act as enacted. 133 B.R. at 845. The *Rotman* court reasoned that courts should not override Congress' implicit decision not to exempt the FDIC from the requirement of reasonable reliance. 133 B.R. at 845.

█ The Panel respectfully disagrees with the reasoning in the *Rotman* case.

The normal rule of statutory construction, especially for bankruptcy codifications, is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. *Midlantic Nat. Bank v. N.J. Dept. of E.P.*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986); *In re Mark Anthony Const., Inc.*, 886 F.2d 1101, 1107 (9th Cir.1989). The *D'Oench, Duhme* doctrine has been a part of our common law for fifty years, although only more recently has it been applied in nondischargeability proceedings. At the time the proposed amendment to § 523(a)(2)(B) was being considered, all of the cases decided up to that point held that reliance could be presumed under the *D'Oench, Duhme* doctrine. *Smith* and *Rotman* were decided later. Therefore, Congress could have deemed the proposed amendment unnecessary. In addition, Congress's satisfaction with the doctrine in general is evident from its recent codification. 12 U.S.C. § 1823(e). We refuse to read anything into Congress's failure to enact the proposed provision.

▪ We hold that application of the *D'Oench, Duhme* doctrine may satisfy the reliance element in causes of action under § 523(a)(2). Where a debtor acted in complicity with a bank to deceive bank examiners, the debtor should bear the consequences rather than the securities regulation process and the innocent depositors or creditors of the failed bank. *In re Culp, supra*, 140 B.R. at 1013; *In re Cerar, supra*, 97 B.R. at 450. Furthermore, bankruptcy courts, as courts of equity, should avoid overly rigid and narrow definitions of "fraud," so that they may respond to the new schemes of fraud which are constantly being invented. *In re Culp, supra*, 140 B.R. at 1013–14. We, like the court in the *Culp* case, refuse to readily impute to Congress an intention to use bankruptcy law to create "a sanctuary for liars." *Id.* at 1014.

▪ Under the *D'Oench, Duhme* rule, the FDIC is deemed as a matter of law to have relied solely on the written records of the bank as they existed at the time it was appointed receiver for the institution. *In re Stefanoff, supra*, 106 B.R. at 256. The FDIC is not bound by agreements, misrepresentations or fraud not apparent from the loan files themselves. 106 B.R. at 257. In this case, it has been shown that the records of the Association were fraudulently misleading. Thus, the FDIC's reliance on those documents satisfies the reliance element of § 523(a)(2)(A).

## V

## CONCLUSION

The bankruptcy court was correct in finding fraud and proximate cause and in presuming reliance under the *D'Oench, Duhme* doctrine. For these reasons, the summary judgment of nondischargeability is AFFIRMED.