**RESOLUTION TRUST CORPORATION as Receiver for Republic Bank for Savings, F.A., Plaintiff/Appellee,**

v.

**Patti H. HILTON, Defendant/Appellant.**

**Civ. A. No. 3:94–CV–532(L)(N).**

United States District Court, S.D. Mississippi, Jackson Division.

April 3, 1995.

Marc E. Brand, Jackson, MS, for plaintiff.

Jimmy Fred Spencer, Jr. (RTC), Watkins & Eager, Stephen M. Maloney (PNL Texas, L.P.), Allred & Donaldson, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on appeal from a final judgment of the bankruptcy court. Debtor Patti Hilton perfected her appeal after entry of judgment against her and in favor of creditor Resolution Trust Corporation (RTC) as receiver for the original lender, Republic Bank for Savings, F.A. (Republic). The court, having considered the memoranda of authorities presented by the parties and the record on appeal, finds that the ruling of the bankruptcy court should be reversed, and the case remanded for further factual findings.

Hilton filed for Chapter 7 bankruptcy relief on January 12, 1990. Her largest single indebtedness at the time was a $117,000 loan incurred by Hilton as guarantor on a loan owed by The Hilton Company, of which she was sole shareholder and president, to RTC as conservator for Republic Bank.[1] RTC filed its complaint objecting to the discharge of this debt under 11 U.S.C. § 523(a)(2)(B). Following a trial in the bankruptcy court, Hilton was refused discharge on that loan from Republic based upon the bankruptcy court's finding that Hilton, with the intent to deceive Republic, had made materially false statements in a financial statement provided to the bank in connection with this loan, upon which Republic reasonably relied in making the loan. The court entered judgment for RTC in the amount of $137,440.40. Upon denial of her new trial motion, Hilton perfected this appeal.

The bankruptcy court denied discharge of this debt based on section 523(a)(2)(B) of the Bankruptcy Code, which provides:

> (a) A discharge under ... this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, refinancing of credit, to the extent obtained by—
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive. . . .

The evidence developed at the trial before the bankruptcy court disclosed that in January 1988, Patti Hilton submitted a financial statement to Republic in connection with a loan she was attempting to acquire to aid her advertising business, The Hilton Company, in a "cash-flow" crisis. On this financial statement, Hilton showed a positive net worth of $148,338 and listed assets in the amount of $50,000 in personal property such as furniture, fixtures and household effects, and $23,185 in furs and jewelry. After securing Hilton's personal guaranty, Republic recommended that she make two notes to the bank, one in the amount of $115,000 and the other for $35,000. The proceeds of the $35,000 loan were to be used to pay off a second mortgage on Hilton's residence held by Trustmark Bank, following which Republic would step in as the second lienholder. The larger loan was secured by The Hilton Company's accounts receivables. No security in-

---

1. RTC was later appointed receiver and substituted as the plaintiff.

terest in any of Hilton's personal property was taken.[2]

Republic itself was the second largest account of The Hilton Company, and when it failed and went into receivership, Hilton's company lost that business. Soon thereafter, the company lost its largest account and was forced to close its doors, defaulting on the debt to Republic. When the bank's conservators called the note secured by her home, Hilton was able to borrow the funds to pay it off from Trustmark Bank. However, she was soon unable to meet her obligations, including the larger note to Republic, and filed for Chapter 7 bankruptcy protection.

Despite having represented on her financial statements provided to Republic that she had personal property worth $50,000, nearly half of which was represented to be furs and jewelry, Hilton listed only $5,750 in exempt personal property on her bankruptcy schedules, including an $1,800 fur coat, a $300 fur jacket and $150 in jewelry. The bankruptcy court, in denying RTC's alternative motion for a general denial of discharge under § 727, concluded that there was no failure on Hilton's part to explain the disappearance of assets, stating, "There is no indication or showing that there was any fraud or chicanery on her part about what happened to her assets." Rather, the court accepted Hilton's testimony that she had sold much of her personal property under "distress sale" circumstances. Consequently, there was no impediment to a general discharge based on a failure to explain disappearance of assets. However, the court concluded that Hilton "never had that many assets," to begin with. The court elaborated on this point, saying,

"It is very obvious to me from the testimony and so forth, she had nowhere near $77,000 worth of furniture, fixtures, household effects, furs and jewelry." Based on these findings, the bankruptcy court determined that Hilton's January 1988 financial statement was materially false, satisfying the first contested element of § 532(a)(2)(B). Concerning the last contested element of § 523(a)(2)(B), the bankruptcy court found that Hilton filed the January 1988 financial statement with intent to deceive Republic. Specifically, the court inferred Hilton's intent to deceive from the material falsity of her financial statement, in reliance on *Highland Village Bank v. Bardwell (In re Bardwell)*, 610 F.2d 228 (5th Cir.1980), *Jordan v. Southeast National Bank (In re Jordan)*, 927 F.2d 221, 226 (5th Cir.1991), *overruled on other grounds by Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257 (5th Cir.1993), and *Young v. National Union Fire Insurance Company of Pittsburgh (In re Young)*, 995 F.2d 547, 549 (5th Cir.1993).

This court is of the opinion that material falsity could have easily been found by the bankruptcy court based solely on the proof of Hilton's overstatement of assets, which the bankruptcy court described as reflecting "greatly inflated values."[3] Neither was the bankruptcy court's finding regarding Hilton's intent to deceive in error. Finding no clear error, this court affirms the bankruptcy court's determination of material falsity.[4] The real focus of this appeal, though, is on the bankruptcy court's conclusion regarding the next element required to be shown under § 532(a)(2)(B) to avoid discharge, i.e., the

---

**2.** In April of 1989, Republic required a second financial statement from Hilton. There she listed a net worth of $255,391, with $62,000 in furniture, fixtures and household effects and furs and jewelry worth $25,455. Although testimony concerning this statement was adduced at trial, the bankruptcy court concluded it was irrelevant to those proceedings as the court's inquiry concerned whether there were materially false statements in the financial statement upon which Republic may or may not have relied in first making the loan.

**3.** The bankruptcy court also relied on the fact that Hilton failed to list the $35,000 debt to Trustmark, secured by a second mortgage on her home, on her financial statement. Hilton argues

that Republic Bank knew of this debt, that there was ample documentation of it in her loan file, and that the second loan she procured from Republic Bank was specifically intended to pay off the Trustmark indebtedness so that Republic Bank could become the second mortgage-holder on her home. The omission of the Trustmark debt and whether or not Republic Bank knew of it independently from the financial statement may go to the reasonable reliance element and may be considered by the bankruptcy court on remand.

**4.** The bankruptcy court's factual findings are reviewed here on a clearly erroneous standard. *Young v. National Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir.1993).

creditor's reasonable reliance on the debtor's false representations. Rather than making a factual finding of reliance based on the record evidence, the bankruptcy court invoked the D'Oench, Duhme doctrine to conclude that the RTC could be presumed, as a matter of law, to have relied on the materials in Hilton's loan file, including her materially false financial statement. The bankruptcy court's conclusion on this point is a purely legal question which this court reviews de novo. See Young v. National Union Fire Ins. Co. (In re Young), 995 F.2d 547, 548 (5th Cir.1993). This court concludes that the bankruptcy court's application of the D'Oench, Duhme doctrine under these circumstances is error.

In concluding that the D'Oench, Duhme doctrine[5] relieved RTC of the burden to prove actual reliance in order to prevent discharge of Hilton's debt to Republic, the bankruptcy court relied primarily on two opinions entered in In re Lefeve. See In re Lefeve, 131 B.R. 588 (Bankr.S.D.Miss.1991), and In re Lefeve, 131 B.R. 604 (Bankr. S.D.Miss.1991). In both Lefeve opinions,[6] the court had held that the D'Oench, Duhme doctrine, which protects the receiver of a federally insured bank from defenses based on side agreements or understandings that are not reflected in the official papers of the failed institution, applied to satisfy the reliance element. That court explained:

> [E]ven if Lefeve could prove that the actual lending officials with which he conducted his business did not rely on any financial statements he submitted before granting him the loan, he would not be able to show that bank regulators, auditors, or receivers, up the line, should not be entitled to rely on the truth of those documents.... [T]he court concludes that documentation in Lefeve's loan file satisfies the element of

reliance by application of the doctrine[ ] announced in D'Oench, Duhme....

Lefeve, 131 B.R. at 595, and Lefeve, 131 B.R. at 610.

At the time they were decided, the Lefeve opinions were not alone in concluding that D'Oench, Duhme could be used to satisfy the reliance element. Indeed, at the time those opinions were issued, that was the majority view. Notably, though, the cases upon which the Lefeve court relied in arriving at its conclusion were distinguishable from Lefeve in that each involved an agreement or understanding between the bank and another with respect to the debt which agreement or understanding was not reflected in the bank's records. Two of those cases cited in Lefeve had applied the presumption where the failed bank and the bankrupt debtor had acted together in a manner which eventually harmed the federal banking authorities. The court in Federal Deposit Insurance Corporation v. Cerar (In re Cerar), 97 B.R. 447 (C.D.Ill.1989), after first observing that the reliance element can normally only be satisfied upon proof that the creditor, in loaning money or providing services, actually relied on the debtor's representation, concluded that "the situation is different where the debtor's fraud was performed in conjunction with his creditor for the purpose of deceiving banking examiners and ultimately the FDIC." Cerar, 97 B.R. at 449 (emphasis added) (quoted in Lefeve, 131 B.R. at 609, and LeFeve, 131 B.R. at 594). Likewise, in Federal Deposit Insurance Corporation v. Figge (In re Figge), 94 B.R. 654 (Bankr. C.D.Cal.1988), the debtors' "principal defense ... [was] that the president of [the bank] was personally aware of all of the true circumstances of the loans, and indeed had an ulterior business motive for approval of the loans." Figge, 94 B.R. at 656.[7] See also

---

**5.** D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (now codified at 12 U.S.C. § 1823(e)).

**6.** The Lefeve opinions were both decided by Judge Edward Gaines of the Bankruptcy Court for the Southern District of Mississippi. The opinions, which are identical in terms of the legal analysis employed, were issued on the same date and consider dischargeability issues for the same debtor on loans from two different finan-

cial institutions for both of which the FDIC had been named receiver. See In re Lefeve, 131 B.R. 588 (S.D.Miss.1991), and In re Lefeve, 131 B.R. 604 (S.D.Miss.1991).

**7.** Moreover, in Figge, the bankruptcy court found actual reliance on the financial statements because the bank "conducted its customary credit check on the Figges, and turned down several other applicants in this scheme, which demon-

*Federal Savings and Loan Insurance Corporation v. Stefanoff (In re Stefanoff)*, 106 B.R. 251 (Bankr.N.D.Okla.1989) (finding no reliance, but stating in *dicta* that *D'Oench, Duhme* doctrine could be used to establish reliance where debtor who made false representations to bank was member of bank's executive committee who arranged for approval of loan); *Federal Deposit Insurance Corporation v. Boebel (In re Boebel)*, 79 B.R. 381 (Bankr.N.D.Ill.1987) (applying doctrine where it was alleged that loan officer had persuaded debtor to sign inaccurate security agreement).

In a third case cited in *Lefeve*, *Federal Deposit Insurance Corporation v. Bombard (In re Bombard)*, 59 B.R. 952 (Bankr. D.Mass.1986), there was no charge of collusion between the bank and the debtor. However, the debtor claimed that a third party had agreed to pay the note, and further asserted a defense of fraud in the inducement. The court concluded, in keeping with *D'Oench, Duhme*, that such an oral agreement was not an adequate defense against the FDIC. *Cf. Federal Deposit Insurance Company v. Smigel (In re Smigel)*, 90 B.R. 935, 941 (Bankr.N.D.Ill.1988) (referring to FDIC's reliance on *D'Oench, Duhme* as "puzzling" in absence of allegation of side agreement, and observing, "The FDIC is apparently arguing for a rule that would relieve the FDIC of the burden of proving each and every element of § 523(a)(2)(B) whenever it challenges the dischargeability of a debt as a successor in interest. The Court rejects such a reading of § 523(a)(2)(B).").

Caselaw after *Lefeve* has generally refused to apply this presumption in favor of a federal banking authority as receiver. Most of these cases, like *Cerar* and *Figge*, have concluded that *D'Oench, Duhme* cannot be used to satisfy the reliance element under § 523(a)(2)(B) unless there is evidence of complicity between the debtor and creditor.[8]

*See In re Berr*, 172 B.R. 299 (9th Cir. BAP 1994) (concluding that in absence of evidence that bank acted in complicity or otherwise with intent to deceive bank examiners, bankruptcy court erred in interpreting *D'Oench, Duhme* as creating presumption which satisfied reliance element; *D'Oench, Duhme* applies only when there is a side agreement between the creditor and debtor); *In re Yarbrow*, 150 B.R. 233 (9th Cir. BAP 1993) (holding that "application of the *D'Oench, Duhme* doctrine may satisfy the reliance element in causes of action under § 523(a)(2)," reasoning that "[w]here a debtor acted in complicity with a bank to deceive bank examiners, the debtor should bear the consequences rather than the securities regulation process and the innocent depositors or creditors of the failed bank.");[9] *Federal Deposit Ins. Corp. v. Calhoun (In re Calhoun)*, 131 B.R. 757, 760 (Bankr.D.D.C.1991) (in absence of allegation that creditor was a party to debtor's fraud, *D'Oenche, Duhme* inapplicable; "[T]he FDIC need not prove reliance where the creditor and the debtor have acted jointly with the intent to defraud the banking examiners or the FDIC.").

Other courts, however, have simply found *D'Oench, Duhme* inapplicable, without reference to the presence or absence of complicity by the bank. For example, in *Federal Deposit Insurance Corporation v. Smith (In re Smith)*, 133 B.R. 800 (N.D.Tex.1991), the bankruptcy court, in response to the FDIC's objection to the discharge of two debts, had held that *D'Oench, Duhme* estoppel could satisfy the reliance element. The district court reversed, finding that "the *D'Oench, Duhme* rule is not a surrogate for proof of actual reliance." 133 B.R. at 802. Rather, the FDIC must prove reliance in fact to assert the exception to discharge found in § 523. The court reasoned that "[t]o invoke

---

strates that loan approval was not automatic." *Figge*, 94 B.R. at 656.

**8.** The court would note that some of the cases addressing this issue have concerned § 523(a)(2)(B), the subsection involved here, while others have addressed the issue under § 523(a)(2)(A). Since both require proof of reli-

ance, the resolution of the issue should be the same regardless of which subsection is at issue.

**9.** Though *Yarbrow* could arguably be interpreted as adopting the view of the bankruptcy court in the case at bar, the *Berr* court clarified that *Yarbrow* was limited to circumstances involving complicity by the bank.

this estoppel rule to fill the factual void is to extend the reach of the doctrine beyond its original and even current moorings to perform a function for which the rule was not intended and which it cannot properly serve under bankruptcy law." *Id.* at 808. The court went on to say:

> That *D'Oench, Duhme* estops defenses and claims that compromise the *enforceability* of a note or guaranty does not extend the doctrine to preclude *dischargeability* of the enforceable obligation.... Enforceability and nondischargeability are distinct concepts in the law and represent separate stages in a creditor's attempt to collect on a particular obligation.

*Id.* at 810. Thus, the court refused to allow the *D'Oench, Duhme* doctrine to be invoked "to satisfy an ineluctable element of a cause of action." *Id.* at 809.

Similarly, in *Federal Deposit Insurance Corporation v. Rotman (In re Rotman),* 133 B.R. 843 (S.D.Tex.1991), the court held that § 523(a)(2)(B) unequivocally required proof of reasonable reliance, and that federal banking authorities could not avail themselves of *D'Oench, Duhme* to pass over this element presumptively. It reasoned that the *D'Oench, Duhme* doctrine, and its codification at 12 U.S.C. § 1823(e), allow federal banking authorities to rely on "properly memorialized agreement[s] between a bank and its customer" and do not contemplate extrapolating this type of statutory right to rely, into a presumption of reasonable reliance on the *unilateral* statement of a bank customer. *Id.* at 846. The court explained as follows:

> The type of reliance urged here by FDIC ... is different from the kind of reliance to which the FDIC is entitled under *D'Oench, Duhme.* ... Here, the FDIC seeks to presume the bank's reliance on a unilateral statement of a bank customer while

*D'Oench, Duhme* ... only allow[s] the FDIC to rely on a properly memorialized agreement between a bank and its customer.... The policy underlying *D'Oench, Duhme* does not allow the FDIC to presume that the [bank] relied on [the debtor's] financial statement anymore than it would compel the FDIC to rely on the bank's own unofficial, unilateral written statements.

*Rotman,* 133 B.R. at 846.

■■■ Though this court finds the reasoning of *Smith* and *Rotman* persuasive, it need not go so far to resolve this case, for the court is in complete accord with the majority view that where there has been no allegation or proof of complicity by the creditor, *D'Oench, Duhme* can not be employed to satisfy the element of reliance under § 523(a)(2)(B). Manifestly, a side agreement between a lender and its debtor which is nowhere reflected in the loan file is barred as a defense by the *D'Oench, Duhme* doctrine. Indeed, that is the purpose of the doctrine, to relieve the bank's receiver from such side agreements. However, the doctrine should extend no further than is required to effectuate its purpose and certainly should not be extended to benefit the RTC when there is no proof of any side agreement or collusive conduct by the bank. In summary, the court concludes that unless there has been some collusion between the bank and the debtor, *D'Oench, Duhme* cannot operate as a substitute for the reliance requirement of § 523(a)(2)(B). Here, the record reveals no allegation or evidence of collusion or any secret agreement between Hilton and Republic. Nor has it been suggested that Republic did anything calculated to deceive the RTC. Thus, the court concludes that the bankruptcy court erred in resorting to the *D'Oench, Duhme* doctrine to find reliance.[10]

---

10. Hilton testified that Steve Riden, a Republic vice-president, told her that her financial statement was "not a meaningful document," and she said that Riden assisted her in preparing the financial statement. When Hilton, the only witness called by RTC, was asked by RTC's counsel whether she knew the financial statement was "important to Republic Bank when [she] submitted it," Hilton replied that she did not know enough about banking to answer that. This evidence does not suggest the existence of any secret agreement. Nor is it probative on the issue of reasonable reliance. A debtor's impression regarding the importance of a document does not go toward establishing the creditor's reasonable reliance upon the document.

Because the bankruptcy court premised its conclusion of reliance exclusively on a presumption stemming from *D'Oench, Duhme*, it did not consider whether Republic actually relied, reasonably or not, upon Hilton's financial statement. The court finds, therefore, that the case should be remanded to the bankruptcy court for factual findings on this issue of reasonable reliance.[11] This court expresses no opinion regarding the evidence of reliance, and holds only that the *D'Oench, Duhme* doctrine, without more, cannot be substituted for the statutory element of reasonable reliance.

For the foregoing reasons, it is hereby ordered that this cause is remanded to the United States Bankruptcy Court for the Southern District of Mississippi for a determination of whether Republic reasonably relied upon Hilton's January 31, 1988 financial statement in extending credit to The Hilton Company.

SO ORDERED.

---

**11.** Hilton also argues on appeal that RTC's burden of proof on the elements of § 532(a)(2)(B) was by clear and convincing evidence, reasoning that since the Supreme Court, in holding that a preponderance of the evidence, rather than a clear and convincing, standard applied to objections to discharge, referred to "civil actions between private litigants." *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Hilton reasons that since the case at bar is not between "private litigants," but rather is between the RTC and a private person, the proper standard must be clear and convincing. This contention is not only illogical, but is also unsupported by caselaw. In fact, numerous post-*Grogan*

cases involving government creditors have unhesitatingly applied *Grogan*s preponderance standard. *See Berr,* 172 B.R. at 310 (FDIC creditor); *Graham v. Internal Revenue Serv. (In re Graham),* 973 F.2d 1089 (3d Cir.1992) (I.R.S. creditor); *Levinson v. United States,* 969 F.2d 260, 265 (7th Cir.1992) (I.R.S. creditor); *Dube v. United States (In re Dube),* 169 B.R. 886 (Bankr. N.D.Ill.1994) (I.R.S. creditor); *Griffith v. United States (In re Griffith),* 161 B.R. 727, 732 (Bankr. S.D.Fla.1993) (I.R.S. creditor); *Resolution Trust Corp. v. Oliver (In re Oliver),* 145 B.R. 303, 306 (Bankr.E.D.Mo.1992) (RTC creditor); *Smith,* 133 B.R. at 805 (FDIC creditor); *Lefeve,* 131 B.R. at 593 (FDIC creditor).