In re James J. McKERNAN, Jr., Debtor.

The CADLE COMPANY, Plaintiff,

v.

James J. McKERNAN, Jr., Defendant.

Bankruptcy No. 93–10347–JNF.
Adv. No. 93–2061.

United States Bankruptcy Court,
D. Massachusetts.

April 21, 1995.

Giles A. Birch, Goodwin, Procter & Hoar, Boston, MA, for debtor/defendant.

Warren J. Hurwitz, Chestnut Hill, MA, for plaintiff.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the "Motion to Dismiss Amended Complaint or for Summary Judgment and Motion to Reconsider" filed by the Debtor, James J. McKernan, Jr. (the "Debtor"). The Plaintiff, the Cadle Company ("Cadle"), filed an Opposition to the Motion.

## II. PROCEDURAL HISTORY

The Debtor filed a voluntary petition under Chapter 13 on January 14, 1993. Two months later, he converted his Chapter 13 case to a case under Chapter 11, and the first meeting of creditors pursuant to 11 U.S.C. § 341 was scheduled for June 7, 1993. After the deadline for filing complaints to determine the dischargeability of debts pursuant to 11 U.S.C. § 523(c) had passed, *see* Fed. R.Bankr.P. 4007(c),[1] Cadle filed, on December 30, 1993, a complaint to determine the dischargeability of a debt.

In its complaint, Cadle alleged, among other things, that its claim was based upon a promissory note and mortgage on property located at 77 Augustus Avenue, Roslindale, Massachusetts, dated September 20, 1989, in favor of Boston Trade Bank in the original principal amount of $70,000.00. In addition to the mortgage, Cadle alleged that the Debtor's obligation also was secured by a Collateral Assignment of Leases and Rents dated September 20, 1989; that the Debtor represented that he had made no other assignments of rent or leases; that the Debtor had executed an Assignment of Rents in favor of ComFed Savings Bank ("ComFed")

---

**1.** Rule 4007(c) provides in relevant part the following:

(c) **Time for Filing Complaint Under § 523(c) in Chapter 7 Liquidation, Chapter 11 Reorganization, and Chapter 12 Family Farmer's Debt Adjustment Cases; Notice of Time Fixed.** A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).... On motion of any party in interest, after hearing on notice the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

on August 31, 1988; that Boston Trade Bank reasonably relied upon the Debtor's representations; and that the Debtor obtained money from the Boston Trade Bank by false pretenses, false representations, or actual fraud in violation of 11 U.S.C. § 523(a)(2)(A).[2]

The Debtor answered the Complaint and set forth two Counterclaims for violation of the automatic stay, see 11 U.S.C. § 362(h), and violation of Mass.Gen.Laws Ch. 93A.

Not having been alerted to the untimely filing of the Complaint, the Court issued a pretrial order on February 16, 1994. The order required the parties to file a joint pretrial memorandum within 90 days and dispositive motions seven days before the due date for the joint pretrial memorandum. The parties filed a joint pretrial memorandum on May 19, 1994, and, on May 24, 1994, the Court scheduled the matter for trial on August 9, 1994.

On July 21, 1994, Cadle filed a Motion for Summary Judgment and, shortly afterwards, moved for a continuance of the trial date. The Debtor filed an Opposition to the Motion for Summary Judgment. The Court allowed the continuance of the trial and scheduled a hearing on the Motion for Summary Judgment for September 29, 1994. In the meantime, the Debtor converted his Chapter 11 case to a case under Chapter 7, and a new time period for filing nondischargeability complaints arose. See Fed.R.Bankr.P. 1019(2). The new deadline for filing nondischargeability complaints was November 21, 1994.

For reasons that cannot be determined from an examination of the record, the hearing scheduled for September 29, 1994 was cancelled. On February 8, 1995, the Court heard the Motion for Summary Judgment, as well as a Motion to Amend Complaint that was filed by Cadle on January 23, 1995. According to Cadle, it wished to amend its original complaint to add counts under 11 U.S.C. §§ 523(a)(6) and 727(a) because of information that it had ascertained through discovery. At the conclusion of the hearing, the Court denied Cadle's Motion for Sum-

mary Judgment, and allowed in part and denied in part its Motion to Amend Complaint. The Court also dismissed the Complaint to the extent Cadle purported to state a cause of action under 11 U.S.C. § 523(a)(2)(B). Specifically, the Court permitted Cadle to file an amended complaint under sections 523(a)(2)(A) and (a)(6).

## III. THE AMENDED COMPLAINT

The Amended Complaint, which contains two counts, discloses that Cadle is the successor-in-interest to the Federal Deposit Insurance Corporation (the "FDIC") and is the current owner of loan documents executed by the Debtor. According to Cadle, the Debtor executed an Assignment of Rents with respect to the Augustus Street property that set forth the following:

> The Assignor [James J. McKernan, Jr. and Cheryl A. McKernan] hereby represents and warrants as follows:
>
> 1. that [sic] is the sole owner of the entire lessor's interest in the Leases, that it has not and shall not execute any other Assignments of any of the Leases or the rents, income and profits....

Cadle alleged that in view of a prior Assignment of Rents to ComFed in 1988 this statement was false and constituted "the obtaining of money by false pretenses, false representation, or actual fraud in violation of § 523(a)(2)(A)." Cadle also alleged the following:

> Plaintiff (as successor to the FDIC) is entitled to rely on the bank records as they existed at the time the FDIC was appointed receiver for the failed Boston Trade Bank. Where the bank records show that the Defendant made a false statement that he had not executed any prior Assignment of Rents, the FDIC's reliance on the false document satisfies the reliance element of § 523(a)(2)(A), even without a showing that the document was relied on by Boston Trade Bank in making the loan.

Amended Complaint, paragraph 11 (citations omitted).

2. Cadle did not set forth in its Complaint why or how it had standing to sue the Debtor.

With respect to count two, Cadle alleged that the Debtor was entitled to collect rents only so long as there was no default under the loan documents, that the Debtor defaulted and continued to collect rents, and that such conduct constituted an intentional and deliberate conversion of property in which it has a security interest in knowing disregard of the its rights in violation of 11 U.S.C. § 523(a)(6).

## IV. DISCUSSION

### A. Count Two

■ The Debtor seeks dismissal of the Amended Complaint, or in the alternative summary judgment with respect to count one. Additionally, he asks the Court to reconsider its decision permitting Cadle to assert a cause of action under section 523(a)(6).

As a preliminary matter, the Court shall reconsider its order of February 8, 1995 permitting Cadle to amend its complaint to add a count under section 523(a)(6). The Court hereby vacates that order. Cadle's count under section 523(a)(6) was time barred, and no grounds existed under Fed.R.Civ.P. 15(c), made applicable to this proceeding by Fed. R.Bankr.P. 7015, to warrant relation back of the amendment.

The Debtor converted his case to a case under Chapter 7 on August 18, 1994. Pursuant to Fed.R.Bankr.P. 1019(2), a new time period for filing nondischargeability complaints arose. Accordingly, on August 26, 1994, the Clerk scheduled a first meeting of creditors pursuant to 11 U.S.C. § 341 and set a November 21, 1994 deadline for filing nondischargeability complaints in the Chapter 7. Cadle's Amended Complaint setting forth a new cause of action under section 523(a)(6) was not filed until January 23, 1995, two months after the deadline.[3] Moreover, a review of the original Complaint and the Amended Complaint demonstrates that the claim asserted in the Amended Complaint did not arise out of the conduct, transaction or occurrence attempted to be set forth in the original Complaint. In other words,

nothing in the original Complaint would have put the Debtor on notice that Cadle contemplated an action for the alleged conversion of rents in which it claims a security interest. Accordingly, count two shall be dismissed.

### B. Count One

In support of his motion to dismiss or alternatively for summary judgment, the Debtor maintains that J–Mac Builders, Inc., a company in which he was the principal officer, borrowed $70,000.00 from the Boston Trade Bank, an obligation he guaranteed and secured with a second mortgage on a three-family property in Roslindale. The Debtor admits that he had previously borrowed $180,000.00 from ComFed, which obligation was secured by a first mortgage on the Roslindale property and an Assignment of Rents that only he, and not his spouse, executed. Paragraph 23 of the standard form mortgage granted to ComFed, captioned "Riders to this Security Instrument," clearly set forth that a 2–4 Family Rider was attached and incorporated into the Security Agreement. The 2–4 Family Rider, sub-captioned "Assignment of Rents," was duly recorded simultaneously with the mortgage at the Suffolk County Registry of Deeds on September 2, 1988.

The Debtor argues that count one of the Amended Complaint should be dismissed because Cadle failed to plead all the elements of its claim, specifically that the Debtor's representation was knowingly or recklessly false or made with the intent to deceive. Additionally, he argues that the *D'Oench Duhme* doctrine cannot supply proof of reliance in this case, a proposition advanced by Cadle in its Amended Complaint in paragraph 11 set forth above. The Court agrees with both arguments.

The Debtor notes that Cadle admitted in pleadings filed with this Court that the first mortgage on the Augustus Avenue property was identified to it in a Chicago Title Insurance policy. Accordingly, the Debtor main-

---

**3.** The Court notes that the original Complaint could have been dismissed because it was filed after the applicable deadline in the Chapter 11. In view of the pendency of the original Com- plaint at the time of conversion, however, the Court shall deem the original Complaint to be timely filed in the Chapter 7 case.

tains that the *D'Oench Duhme* doctrine is inapplicable when the bank's records reflect accurate information. The Debtor adds that 1) the *D'Oench Duhme* doctrine should not apply to dischargeability situations, *see In re Smith,* 133 B.R. 800, 810–11 (N.D.Tex.1991), *In re Rotman,* 133 B.R. 843, 846 (Bankr. S.D.Tex.1991); and 2) even if the doctrine can be applied in nondischargeability cases, it only can be applied in situations where a debtor and a bank have acted in collusion to defraud bank examiners. *See In re Yarborrow,* 150 B.R. 233, 239 (Bankr. 9th Cir.1993); *In re Cerar,* 97 B.R. 447, 448 (C.D.Ill.1989); *In re Calhoun,* 131 B.R. 757, 760 (Bankr. D.D.C.1991); *In re Stefanoff,* 106 B.R. 251 (Bankr.N.D.Okla.1989); *In re Figge,* 94 B.R. 654 (Bankr.C.D.Cal.1988); *In re Boebel,* 79 B.R. 381, 384 (Bankr.N.D.Ill.1987); *In re Bombard,* 59 B.R. 952, 954–55 (Bankr. D.Mass.1986). *See also* 12 U.S.C. § 1823(e).

Cadle, in opposition to the Debtor's motion to dismiss, argues that the *D'Oench Duhme* doctrine establishes the reliance elements necessary to sustain its cause of action. It cites with approval the decision of the Ninth Circuit Bankruptcy Appellate Panel in *In re Yarborrow* in which the court stated the following:

> The sole fact that application of the *D'Oench Duhme* doctrine to nondischargeability actions is relatively new will not prevent us from applying the doctrine. We believe that use of the *D'Oench, Duhme* doctrine in § 523(a) actions is clearly in line with the doctrine's policy to protect the FDIC and the public funds it administers against misrepresentations concerning the assets of insured banks. The need to protect FDIC funds is especially apparent now, in light of the recent devastating losses involved in the failure of many saving and loan associations in this country.

\*   \*   \*   \*   \*   \*

> We hold that application of the *D'Oench, Duhme* doctrine may satisfy the reliance element in causes of action under § 523(a)(2). Where a debtor acted in complicity with a bank to deceive bank examiners, the debtor should bear the consequences rather than the securities regula-

tion process and the innocent depositors or creditors of the failed bank. . . .

\*   \*   \*   \*   \*   \*

> Under the *D'Oench, Duhme* rule, the FDIC is deemed as a matter of law to have relied solely on the written records of the bank as they existed at the time it was appointed receiver for the institution. The FDIC is not bound by agreements, misrepresentations or fraud not apparent from the loan files themselves.

150 B.R. at 238 (citations omitted). While the *Yarborrow* court appeared to advocate an expansive approach to the use of the *D'Oench Duhme* doctrine, this Court notes that the court linked its use to side agreements raised by debtors to defend against repayment demands made by the FDIC.

In *In re Burgess,* 955 F.2d 134 (1st Cir. 1992), the United States Court of Appeals for the First Circuit set forth the elements of a cause of action under section 523(A)(2)(A) in addition to loss suffered by the plaintiff: "(1) the debtor obtained property by means of a knowingly false representation or one made in reckless disregard of its truthfulness; (2) the debtor intended to deceive the creditor; (3) the creditor actually relied on the misrepresentation; (4) the creditor's reliance was reasonable in the circumstances." *Id.* at 140. Application of the *D'Oench Duhme* doctrine is critical to Cadle's case to supply the necessary element of reliance since it was not a party to the original loan transaction.

The goal of 12 U.S.C. § 1823(e) and the *D'Oench Duhme* doctrine is to insulate the FDIC from unwritten side agreements between borrowers and failed banks that would diminish the assets that the FDIC acquires from failed banks and that are not apparent from the banks' records. *See Boebel,* 79 B.R. at 384. Since Cadle has neither alleged the existence of any side agreement between the Debtor and the Boston Trade Bank nor collusion to evade Boston Trade Bank's lending limits or the types of miscon-

duct noted by the courts in the cases cited above, the *D'Oench Duhme* doctrine is not applicable to this case. However, assuming for the sake of argument that Cadle is correct and that it can rely upon bank records, the Court notes that, in addition to the Assignment of Rents in which the Debtor arguably misrepresented that he had not executed a prior assignment of rents, Cadle admits that it received from the FDIC a Chicago Title Insurance policy that insured Boston Trade Bank's second mortgage and Collateral Assignment of Rents. Cadle argues that because the insurance policy referred only to the first mortgage to ComFed and not specifically to a prior assignment of rents the records it obtained from the FDIC establish the Debtor's fraud and its reliance. This Court does not agree, as any fraud that may have occurred could be gleaned from the records Cadle obtained from the FDIC and from the Boston Trade Bank and from the public record.

This Court finds as a matter of law that Cadle cannot rely upon the *D'Oench Duhme* doctrine to establish actual and reasonable reliance. The FDIC's records obtained from the Boston Trade Bank contained information that compel a finding that there was no reasonable reliance and perhaps no actual reliance by either the FDIC or the Boston Trade Bank on the Debtor's signature on the Collateral Assignment of Rents. The title insurance policy and its reference to a standard form first mortgage that explicitly incorporated an Assignment of Rents that was a matter of public record at the time the Debtor executed the Collateral Assignment of Rents, coupled with the absence of any side agreements or collusion between the Debtor and the Boston Trade Bank to evade lending limits as was the case in *In re Bombard,* 59 B.R. 952 (Bankr. D.Mass.1987), compel this Court to conclude that Cadle cannot establish a necessary element of its case under section 523(a)(2)(A) of the Bankruptcy Code.

## V. CONCLUSION

In accordance with the foregoing, the Court hereby dismisses count two of Cadle's Amended Complaint and enters summary judgment in favor of the Debtor and against Cadle with respect to count one. The Court shall schedule a pre-trial hearing with respect to the Counterclaims against the Plaintiff.